[No. S093597. July 8, 2002.]

CHRIS LOLLEY, Plaintiff and Appellant, v.
SHAWN CAMPBELL, Defendant and Respondent.

## COUNSEL

William A. Reich for Plaintiff and Appellant.

Asian Law Caucus, Hina B. Shah; California Rural Legal Assistance, Cynthia L. Rice; The Employment Law Center, Michael T. Gaitley, David P. Pogrel; La Raza Centro Legal and Virginia Villegas as Amici Curiae on behalf of Plaintiff and Appellant.

Lascher & Lascher, Gabriele Mezger-Lashly; Law Offices of James L. Spencer and James L. Spencer for Defendant and Respondent.

Paul, Hastings, Janofsky & Walker, Paul Grossman, Leslie L. Abbott and Patricia M. Berry for California Employment Law Council as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—The issue we decide is whether the superior court may assess attorney fees against an employer who unsuccessfully appeals an

administrative order to pay wages if the employee cannot afford counsel and is represented without charge by the Labor Commissioner. The Court of Appeal held that attorney fees could not be awarded in such circumstances, because an indigent employee who is represented by the Labor Commissioner has not "incurred" attorney fees within the meaning of Labor Code section 98.2, subdivision (c).[1] We disagree and reverse the judgment of the Court of Appeal.

## I

In April 1998, Chris Lolley filed a claim before the Labor Commissioner against his former employer Shawn Campbell, doing business as Tri-County Builders Supply, to recover unpaid overtime wages and penalties. (§ 203.) Following an administrative hearing, at which Lolley represented himself and Campbell appeared through counsel, the hearing officer awarded Lolley a total of $27,216.14 in unpaid overtime wages, penalties, and interest.

Campbell filed a notice of appeal requesting that the cause be set for a hearing de novo in the superior court. (§ 98.2.) At Lolley's request, the Labor Commissioner determined that Lolley could not afford counsel and agreed to represent him at the hearing de novo. (§ 98.4.) As part of the agreement for representation, Lolley assigned to the Labor Commissioner any attorney fees recovered in the pending hearing.

The hearing de novo was held in January 1999. The superior court determined that Campbell had violated state wage and hour laws and awarded Lolley a total of $14,413.71 plus costs.

In May 1999, Lolley filed a memorandum of costs requesting $6,600 in attorney fees. Campbell filed a motion to strike or tax costs on the ground, among others, that Lolley was not entitled to attorney fees because he had been represented by the Labor Commissioner. The superior court granted the motion to strike, concluding that Lolley had not "incurred" attorney fees within the meaning of the statute.

The Court of Appeal affirmed, concluding that because Lolley "was not obligated to pay attorney's fees to the Labor Commissioner" he was not entitled to recover them. We granted review.

## II

The Labor Commissioner has the authority to investigate complaints by employees and "may provide for a hearing in any action to recover

---

[1]Further statutory references are to the Labor Code, unless otherwise noted.

wages, penalties, and other demands for compensation . . . ." (§ 98, subd. (a).) The administrative hearing—commonly known as a "Berman hearing"—is conducted "in an informal setting preserving the right[s] of the parties" (*ibid.*) and "is designed to provide a speedy, informal, and affordable method of resolving wage claims." (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704], disapproved on another ground in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].) The purpose of the Berman hearing is "to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims." (*Cuadra v. Millan, supra,* 17 Cal.4th at p. 869.)

The parties may seek review of the commissioner's decision by filing an appeal to the superior court "where the appeal shall be heard de novo." (§ 98.2, subd. (a).) " ' "A hearing *de novo* [under section 98.2] literally means a new hearing," that is, a new trial.' [Citation.] The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense." ' [Citation.]" (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 948 [98 Cal.Rptr.2d 671, 4 P.3d 928].)

If the employee is unable to afford counsel, the employee may ask the Labor Commissioner to represent him or her at the hearing de novo. Section 98.4 provides that the Labor Commissioner "may" represent an employee who is "financially unable to afford counsel," and "shall" represent such an employee if the employee "is attempting to uphold the amount awarded by the Labor Commissioner and is not objecting to any part of the Labor Commissioner's final order." (*Ibid.*)

Section 98.2, subdivision (c) provides: "If the party seeking review by filing an appeal to the . . . superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal."

### III

 Noting that section 98.2, subdivision (c) requires an unsuccessful appellant to pay the costs and reasonable attorney fees "incurred by the other parties to the appeal," the Court of Appeal concluded that an indigent employee who is represented by the Labor Commissioner may not collect attorney fees under this provision because such an employee has not "incurred" them within the meaning of the statute.

We begin by examining the statutory language, but our inquiry does not end there. Our purpose in construing a statute is to determine the

intent of the Legislature. ██ Accordingly, we must determine the meaning of the phrase "reasonable attorney's fees incurred by the other parties to the appeal" as it appears in section 98.2, subdivision (c), giving due consideration to its statutory context. (See *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].)

The Court of Appeal observed that "the dictionary definition of 'incur' is to 'become liable or subject to' (Webster's 3d New Internat. Dict. (1981) p. 1146)" and concluded that Lolley had not "incurred" fees because he "was not obligated to pay attorney's fees to the Labor Commissioner." In practice, it has been generally agreed that a party may "incur" attorney fees even if the party is not personally obligated to pay such fees. "A party's entitlement to fees is not affected by the fact that the attorneys for whom fees are being claimed were funded by governmental or charitable sources or agreed to represent the party without charge." (Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1999) § 3.3, p. 48 (rev. 11/01).) The principle was explained by the federal circuit court in *Ed A. Wilson, Inc. v. General Services Admin.* (Fed.Cir. 1997) 126 F.3d 1406, 1409: "It is well-settled that an award of attorney fees is not necessarily contingent upon an obligation to pay counsel. Generally, 'awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel.' " More specifically, courts have awarded attorney fees under fee-shifting statutes that apply when fees are "incurred" when the party seeking fees was represented by a legal services organization or counsel appearing pro bono publico; "attorney fees are incurred by a litigant 'if they are incurred in his behalf, even though he does not pay them.' " (*Ibid.*)

██ Likewise, in cases involving a variety of statutory fee-shifting provisions, California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets.[2] ██ Thus, in *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1127 [104 Cal.Rptr.2d 377, 17 P.3d 735], involving a fee award under Code of Civil Procedure section 425.16, which permits a defendant to "recover his . . . attorney's fees and costs" for bringing a successful motion to strike in a so-called strategic lawsuit against public participation (SLAPP suit), we explained that "any SLAPP defendant who

[2]The right of a party to seek an award of statutory attorney fees is not equivalent to a right to retain such fees. We recently held in *Flannery v. Prentice* (2001) 26 Cal.4th 572, 575 [110 Cal.Rptr.2d 809, 28 P.3d 860], which involved a fee award under the fee-shifting provision of the California Fair Employment and Housing Act (Gov. Code, § 12965), that fees awarded for legal services provided to the client under a contingency arrangement, absent an enforceable agreement to the contrary, "belong to the attorneys who labored to earn them."

brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1131.) Although the indigent defendant in *Ketchum* was not obligated to pay any fees out of his own assets, we held that an award of fees was authorized to pay the attorney for "the fees *incurred* with respect to the underlying claim" and "the fees *incurred* in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16." (*Id.* at p. 1141, italics added.)

Similarly, in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511], we held that a corporation represented by in-house counsel could recover attorney fees under Civil Code section 1717. We compared the duties of "counsel working for a corporation in-house" to those of "private counsel engaged with respect to a specific matter" and concluded: "Both . . . provide . . . equivalent legal services. And both incur attorney fees and costs within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1094, fn. omitted.) We explained that attorney fee awards were not limited to situations in which a client was required to pay for representation on a fee-for-service basis. (*Id.* at p. 1097, fn. 5.) We specifically rejected the contention of the defendant, essentially repeated by Campbell herein, that attorney fees "incurred" means *only* fees a litigant actually pays or becomes liable to pay from his own assets. (*Id.* at p. 1097.) Instead, we focused on the fact that the client in *Drexler* was seeking statutory fees to pay for legal services provided pursuant to an attorney-client relationship. (*Ibid.*; see also *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 283 [105 Cal.Rptr.2d 674].)

Our appellate courts have repeatedly affirmed awards of attorney fees under various fee-shifting provisions for legal services provided at no personal expense to the client. Thus, *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 681 [186 Cal.Rptr. 589, 652 P.2d 437], rejected the contention that statutory fees under Code of Civil Procedure section 1021.5 could not be awarded to pay for legal services provided to the plaintiffs because they "incurred no personal liability for the services of their attorneys, several of whom were employed by agencies funded primarily with public monies." Similarly, the Court of Appeal held in *Rosenaur v. Scherer, supra,* 88 Cal.App.4th at page 287, that Code of Civil Procedure section 425.16 permitted "recovery of attorney fees that have accrued in representing the defendants . . . notwithstanding counsel's agreement not to look to defendants for payment." *In re Marriage of Ward* (1992) 3 Cal.App.4th 618, 624 [4 Cal.Rptr.2d 365], affirmed a statutory fee award in a child support matter under former Civil Code sections 4370, 4370.5, and 4370.6 for services provided pro bono publico. (See also, e.g., *County of*

*Humboldt v. Swoap* (1975) 51 Cal.App.3d 442, 444-445 [124 Cal.Rptr. 510] [a welfare recipient was no less entitled to statutory fees under Welf. and Inst. Code, § 10962 "simply because they are payable to a legal aid agency which furnishes its services without charge to the client"]; *Beverly Hills Properties v. Marcolino* (1990) 221 Cal.App.3d Supp. 7, 12 [270 Cal.Rptr. 605] [a party represented without charge by a public interest organization was entitled to a fee award under Civ. Code, § 1717].)

As the above-cited cases reveal, fee-shifting provisions similar to the one herein have been held to authorize an award of reasonable attorney fees to publicly as well as privately funded legal services providers. As we observed in *Folsom v. Butte County Assn. of Governments, supra,* 32 Cal.3d at page 683: "Whether we focus on enabling suits by those otherwise unable to pursue the litigation, or deterring misconduct, an award to lawyers who have vindicated an important interest achieves the desired result whether they worked for a private firm or a legal services organization." Thus, for example, *In re Marriage of Ward, supra,* 3 Cal.App.4th 618, authorized an award of statutory attorney fees to a legal services organization that was partially funded by state and federal grants and court-awarded attorney fees. The Court of Appeal stressed that such fee awards afford indigent clients of publicly funded counsel the same leverage and protection available to clients of private counsel, and avoid a potential windfall to the losing party. (*Id.* at pp. 625-626). " '[A] realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements.' " (*Id.* at p. 625.) Fee awards to publicly funded attorneys also serve the *taxpayer's* " 'interest in recovering where possible a portion of the costs' " of the legal services provided at no charge to an indigent client. (*Ibid.*)

The legislative history of section 98.2 offers additional support for our construction of the statute. An early analysis of the bill that added the fee-shifting fee provision to section 98.2 (see Stats. 1980, ch. 453, § 1, p. 960, adding former subd. (b), now subd. (c)) noted that its fiscal effect included "possible moneys to the State on the basis of attorneys' fees and other costs that would be assessed." (Cal. Dept. of Industrial Relations, Analysis of Sen. Bill No. 1397 (1979-1980 Reg. Sess.) Mar. 19, 1980, p. 2.) A later analysis of the bill observed that "[s]ince the commissioner is successful in about 80% of all appeals, this bill would result in a net increase in revenues to the commissioner." (Assem. Com. on Labor, Employment & Consumer Affairs, 2d reading analysis of Sen. Bill No. 1397 (1979-1980 Reg. Sess.) as amended Apr. 21 1980.) Before the bill was signed by the Governor, the Department of Industrial Relations submitted an enrolled bill report explaining that "[i]n 1979 the Labor Commissioner was successful in

80% of the appeals to the court so that in most appeals, attorney fees and cost[s] would be awarded . . . ." (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Sen. Bill No. 1397 (1979-1980 Reg. Sess.) prepared for Governor Brown (July 3, 1980), p. 1.) It appears, therefore, that the Legislature viewed the statute as providing for reasonable attorney fees and costs to be awarded for legal services provided by the Labor Commissioner as well as by private attorneys.

Our construction of section 98.2, subdivision (c) serves the legislative purpose of discouraging unmeritorious appeals of wage claims, thereby reducing the costs and delays of prolonged disputes, by imposing the full costs of litigation on the unsuccessful appellant. (*Dawson v. Westerly Investigations, Inc.* (1988) 204 Cal.App.3d Supp. 20, 24 [251 Cal.Rptr. 633] [the purpose of § 98.2, subd. (c) is "to discourage meritless and unwarranted appeals by assessing costs and attorneys' fees against unsuccessful appellants" (italics omitted)]; see also *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 575 [38 Cal.Rptr.2d 221] [these provisions were intended to provide "disincentives to discourage meritless and unwarranted appeals"].) Discouraging meritless appeals is consonant with the general purpose of section 98 et seq., noted above, to "provide a speedy, informal, and affordable method of resolving wage claims." (*Cuadra v. Millan, supra,* 17 Cal.4th 855, 858.)

Our holding treats equally indigent claimants and those that can afford private counsel. A contrary interpretation of section 98.2, subdivision (c) would deny the benefit of the attorney fees provision, which is intended to avoid the unnecessary delay caused by unmeritorious appeals, to indigent employees who are most in need of prompt resolution of their wage claims. Precluding an award of fees when indigent employees are represented by the Labor Commissioner would potentially place them at a unfair disadvantage; unlike claimants who can afford private counsel, they would face a greater likelihood of time-consuming and costly appeals by employers undeterred by the threat of statutory attorney fees. It would also permit a windfall, at taxpayer expense, to employer-appellants, by relieving them of the obligation to bear the financial costs of legal services provided by the Labor Commissioner to defend an indigent employee's meritorious claim for unpaid wages. To paraphrase the Court of Appeal in *In re Marriage of Ward*, taxpayers should be relieved from the financial burden of obtaining an indigent employee's unpaid wages to the extent that the employer is able to pay attorney fees. (*In re Marriage of Ward, supra,* 3 Cal.App.4th at p. 625.)

■ In arguing that Lolley did not "incur" attorney fees within the meaning of the statute, Campbell relies upon our decision in *Trope v. Katz*

(1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259]. We held in *Trope* that an attorney who appears in propria persona in an action to enforce a contract could not recover attorney fees under Civil Code section 1717, which provides for an award of reasonable attorney fees "incurred" by the prevailing party in certain actions. We stated: "To 'incur' a fee, of course, is to 'become liable' for it [citation], i.e., to become obligated to *pay* it. It follows that an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities." (*Trope v. Katz, supra,* 11 Cal.4th 274, 280.) We also examined the word "fee" and concluded that "the usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation." (*Ibid.*) This language, however, was not intended to resolve issues, such as the one presented here, that were not raised in *Trope*. ▇ This was demonstrated by our later decision in *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, in which we rejected the defendant's reliance on the above-quoted language in *Trope* that the term "attorney fees" generally refers to fees the litigant "actually pays or becomes liable to pay," noting that *Trope* did not address whether attorney fees could be awarded under Civil Code section 1717 for work preformed by in-house counsel, and citing the familiar rule that "the language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts. [Citation.]" (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1097.)

▇ The Court of Appeal also concluded that an attorney fee award was precluded in this matter because the Labor Commissioner was obligated under section 98.4 to represent Lolley. We discern no sound basis in law or policy for precluding the Labor Commissioner, as such, from recovering costs and reasonable attorney fees for litigating a wage claim on behalf of an indigent employee, whether the Labor Commissioner represents the employee as an exercise of discretion under section 98.4 or pursuant to statutory mandate. The provision makes no exception for attorneys assigned by the Labor Commissioner to represent a claimant under section 98.4. When the Legislature has determined that attorney fees may *not* be awarded to a public entity, it has generally done so expressly. Thus, for example, section 218.5, which provides for an award of reasonable attorney fees and costs in court actions to recover wages, fringe benefits, or health and welfare or pension fund contributions, expressly excludes actions brought by the Labor Commissioner. (See also, e.g., Code Civ. Proc., § 1021.5 [precluding the use of multipliers in calculating attorney fees awarded to a public entity in an action resulting in enforcement of an important right affecting the public

interest]; Gov. Code, § 12965, subd. (b) [providing for attorney fees "except where the action is filed by a public agency or public official, acting in an official capacity"].)

Campbell points to section 98.2, subdivision (j), which specifically authorizes the Labor Commissioner to recover court costs and reasonable attorney fees for enforcing a judgment for unpaid wages: "The judgment creditor, or the Labor Commissioner as assignee of the judgment creditor, shall be entitled to court costs and reasonable attorney fees for enforcing the judgment that is rendered [in a wage claim]." We do not understand the latter provision to impliedly *limit* the Labor Commissioner's entitlement to attorney fees to *only* those instances in which it is acting as an assignee. As the Labor Commissioner explains, section 98.2, subdivision (j) was enacted along with other provisions pertaining to the Labor Commissioner's responsibility to aid with enforcement of judgments. It recognized that employees who were not represented by the Labor Commissioner in a wage claim (e.g., when the employer did not file an appeal or when the employee was represented by private counsel) could assign their judgments to the Labor Commissioner for enforcement, in which event the commissioner would be entitled to recover reasonable attorney fees. Absent the authorization under the subdivision, the Labor Commissioner would have no statutory basis for requesting fees for enforcing judgments for unpaid wages. Section 98.2, subdivision (j) thus refers to a specific authorization for fees distinct from, and in addition to, the general fee-shifting provisions under subdivision (c). Section 98.2, subdivision (c) by contrast, provides generally for an award of costs and reasonable attorney fees, without distinguishing among attorneys on the basis of their funding source; on its face it applies equally to attorneys employed by the state.

Campbell also notes that a proposed amendment to section 98.2, subdivision (c) that was deleted from the final version of the bill, would have provided expressly for an award of attorney fees to the commissioner for representing a claimant pursuant to section 98.4. (Assem. Bill No. 2509 (1999-2000 Reg. Sess.), as amended June 26, 2000, at p. 10.)[3] He maintains that the failed amendment was intended to change previous law. The point is without merit. The deleted language might equally have been intended to clarify existing law. ■ "We can rarely determine from the failure of the Legislature to pass a particular bill what the intent of the Legislature is

---

[3]The proposed amendment stated that if the party seeking review of an administrative order was unsuccessful, "the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, regardless of whether the successful party is represented by his or her attorney or by the Labor Commissioner pursuant to Section 98.4, and shall assess that amount as a cost upon the party filing the appeal." (Assem. Bill No. 2509 (1999-2000 Reg. Sess.) as amended June 26, 2000, at p. 10.)

with respect to existing law. 'As evidences of legislative intent they [unpassed bills] have little value.' [Citations.]" (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1349 [241 Cal.Rptr. 42, 743 P.2d 1299], fn. omitted; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323].) Moreover, no clear inference may be drawn from the failed amendment about the Legislature's understanding of section 98.2, subdivision (c) at the time that it was enacted. As we have explained: "The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law. . . . [T]he statute presently in effect [is binding], not . . . a legislative statement of intent that failed to become law." (*Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 [276 Cal.Rptr. 114, 801 P.2d 357].)

█ Campbell maintains that awarding attorney fees when an employee is represented by the Labor Commissioner deprives him of due process because it gives the commissioner "a pecuniary interest in the case, thus denying the employer an impartial and fair hearing before the Labor Commissioner." This claim, however, is addressed to the potential bias of the hearing officer, an issue that was not raised below because Campbell did not challenge the hearing officer.

Campbell cites *Tumey v. Ohio* (1927) 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749], which found a violation of due process where the defendant was tried by the mayor of a village for violating the Prohibition Act, because the mayor's fees for acting in this capacity were paid by fines collected from the defendant. The mayor would be paid for his services as a judge only if he found the defendant guilty. █ The high court held that "it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." (*Id.* at p. 523 [47 S.Ct. at p. 441].) █ The same is not true in the present case. Even if Campbell had challenged the impartiality of the hearing officer, there is no showing that the hearing officer had "a direct, personal, substantial, pecuniary interest" in the case. (Cf. *Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238 [100 S.Ct. 1610, 64 L.Ed.2d 182], rejecting a due process challenge to a provision of the Fair Labor Standards Act [29 U.S.C. § 216(e)] that provided that sums collected as civil penalties for the unlawful employment of child labor were returned to the Employment Standards Administration of the Department of Labor in reimbursement for the costs of determining violations and assessing penalties.)

## IV

For the foregoing reasons, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this decision.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Respondent's petition for a rehearing was denied September 25, 2002, and the opinion was modified to read as printed above.