134 Cal.Rptr.2d 734 (2003)
109 Cal.App.4th 404
Christie Julie DO, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Quang Thanh Nguyen, Real Party in Interest.
No. G031415.
Court of Appeal, Fourth District, Division Three.
May 30, 2003.
Rehearing Granted June 18, 2003.
Crowell & Moring and Steven P. Rice, Irvine, for Petitioner.
No appearance for Respondent.
Eric T. Smith for Real Party in Interest.
Rehearing Granted June 18, 2003. See 135 Cal.Rptr.2d 855.

OPINION
RYLAARSDAM, J.
Steven P. Rice is the attorney for petitioner Christie Julie Do, the defendant in the trial court. Because Do is indigent, Rice is representing her free of charge. Petitioner seeks relief from an order denying her request for monetary discovery sanctions. Even though plaintiff, real party in interest Quang Thanh Nguyen, twice failed to appear for noticed depositions, the court denied the request concluding it had no power to order sanctions in favor of a party represented by a lawyer acting without charge. We disagree with this conclusion and therefore issue a writ of *735 mandate ordering the trial court to award monetary sanctions to petitioner.

FACTS
The Public Law Center (PLC), a nonprofit public interest law firm sponsored by the Orange County Bar Association, solicits members of that association to represent indigent litigants free of charge. When real party sued petitioner, an indigent, non-English speaking immigrant, alleging breach of a loan agreement, petitioner sought the assistance of PLC. PLC helped her prepare and file an answer asserting the written loan agreement was obtained by fraud. As the action progressed, PLC became aware the matter was too complicated for petitioner to proceed without representation. Rice, a member of Crowell & Moring LLP, had previously handled similar cases for PLC's clients without charging a fee, and PLC asked him to represent petitioner on the same basis. Rice agreed to do so, substituted in as petitioner's attorney of record, and continues to represent her in the trial court and here.
In the course of the litigation, Rice noticed the deposition of real party, who twice failed to appear. Rice then filed a motion to compel the deposition; the motion also asked for monetary sanctions based on the reasonable value of Rice's services. After receiving the motion, real party's lawyer agreed to present his client for a deposition, and by the time of the hearing, the deposition was completed, making the motion to compel moot.
However, the court heard, and ultimately denied, the motion for sanctions. The order recited as the sole reason for the denial: "Counsel for Defendant has taken this matter pro bono. In Argaman [v. Raton (1999) 73 Cal.App.4th 1173, 86 Cal. Rptr.2d 917], an attorney appearing in propria persona was not entitled to attorney[ ] fees for time spent on a discovery dispute. The Court sees the situation of a litigant with pro bono counsel as analogous. CCP 2023(b)(1) refers to `reasonable expenses, including attorney's fees incurred ...' as a result of a misuse of the discovery process."

DISCUSSION

Standard of Review
Although we would normally review denial of a discovery sanction using an abuse of discretion standard (Young v. Rosenthal (1989) 212 Cal.App.3d 96, 114, 260 Cal. Rptr. 369), here we deal solely with a question of statutory interpretation. Thus we review the issue de novo. (Argaman v. Ratan, supra, 73 Cal.App.4th at p. 1176, 86 Cal.Rptr.2d 917.)

Sanctions in The Discovery Scheme
Code of Civil Procedure section 2025, subdivision (j)(3) (all further statutory references are to that code except where otherwise noted) provides that if a party fails to appear for a validly noticed deposition, the noticing party may move to compel attendance. The subdivision further states: "If this motion is granted, the court shall also impose a monetary sanction under Section 2023 against the deponent ..., unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.) The trial court made no such finding here. Therefore, considering the mandatory language of the statute, it would seem petitioner is entitled to sanctions. But the cross-reference to section 2023 clouds the issue.
Section 2023, subdivision (a) specifies certain conduct as "[m]isuses of the discovery process." The list does not purport to be exclusive and does not specify failure to *736 appear at a deposition as such a "misuse." Section 2023, subdivision (b)(1) provides that, "[t]o the extent authorized by the section governing any particular discovery method ..., [¶] ... [t]he court may impose a monetary sanction...." (Italics added.) In spite of this permissive language, our courts have recognized that "the court will impose the monetary sanction unless the losing party convinces the court that it acted with `substantial justification.'" (California Shellfish, Inc. v. United Shellfish Co. (1997) 56 Cal.App.4th 16, 25, 64 Cal.Rptr.2d 797, italics omitted.) Thus here, where there is no finding of such justification, petitioner would be entitled to monetary sanctions unless her lawyer's generosity bars such relief.
The purpose of discovery sanctions "is not `to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits' [citation]" (Caryl Richards Inc. v. Superior Court (1961) 188 Cal.App.2d 300, 303, 10 Cal.Rptr. 377), but to prevent abuse of the discovery process and correct the problem presented (Motown Record Corp. v. Superior Court (1984) 155 Cal.App.3d 482, 490, 202 Cal. Rptr. 227; Fred Howland Co. v. Superior Court (1966) 244 Cal.App.2d 605, 610, 53 Cal.Rptr. 341). Were we to accept the trial court's interpretation of the statute and case law, those purposes would hardly be advanced. It would ill serve the objectives of the discovery statutes were we to conclude that, where a lawyer who represents a party free of charge, the opponent may engage in discovery abuses with impunity. Further, in agreeing to assist an impecunious litigant, a lawyer intends to confer a benefit on the client but certainly not on the client's opponent. Finally, it should be the policy of the law to encourage conscientious lawyers, such as Rice, to represent indigents. A rule that would make discovery abuse by the opponent more likely where lawyers donate their time would discourage performance of such worthy service.

Analogous Supreme Court Decisions
Although this is a case of first impression, there are several Supreme Court decisions that deal with issues analogous to the one before us. They also resolve questions relating to the reimbursement of litigants who did not in fact "incur" additional fees as a result of their opponent's actions. The cases involve lawyers who represent themselves, lawyers who represent their clients on a contingent fee basis, in-house lawyers, and, most recently, a client represented by the Labor Commissioner. In none of these situations can it be said that the client "incurred" attorney fees based on acts of the opposing party. Nevertheless, most of these cases permit recovery of fees.
Four opinions issued by our Supreme Court in the last decade provide us with significant guidance. These are Lolley v. Campbell (2002) 28 Cal.4th 367, 121 Cal. Rptr.2d 571, 48 P.3d 1128 (Lolley), Ketchum v. Moses (2001) 24 Cal.4th 1122, 104 Cal.Rptr.2d 377, 17 P.3d 735 (Ketchum), PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 95 Cal.Rptr.2d 198, 997 P.2d 511 (PLCM), and Trope v. Katz (1995) 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259 (Trope). We examine the rationales supporting each of these decisions, starting with the earliest, to determine to what extent they speak to the issue confronting us.
Trope denied fees under section 1717 to a self-represented lawyer-litigant. In the first paragraph of its opinion, the Trope court expressed the major concern that led to this conclusion: "Were we to construe the statute [so as to permit recovery of fees], we would in effect create two separate classes of pro se litigantsthose who *737 are attorneys and those who are notand grant different rights and remedies to each." (Trope, supra, 11 Cal.4th at p. 277, 45 Cal.Rptr.2d 241, 902 P.2d 259.) And later in the opinion, "such disparate treatment would conflict with the legislative purpose of section 1717. The statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the oppressive use of one-sided attorney fee provisions. [Citations.] If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot do so regardless of the personal and economic value of such time simply because he has chosen to pursue a different occupation, every such contract would be oppressive and one-sided." (Trope, supra, 11 Cal.4th at pp. 285-286, 45 Cal.Rptr.2d 241, 902 P.2d 259.)
The problem of one-sidedness identified by the Trope court leads to a different conclusion here. The effect on the opposing party is the same whether the lawyer who successfully makes or resists a discovery motion is paid a fee or not. The opposite of the situation under section 1717 is true: were we to hold that parties represented by lawyers who provide their services free of charge are not entitled to sanctions while parties who have to pay fees are, we could say with the Trope court that such a construction of the statute "would in effect create two separate classes of [discovery] litigants," those who must pay their lawyers and those who need not, "and grant different rights and remedies to each." (Trope, supra, 11 Cal.4th at p. 277, 45 Cal.Rptr.2d 241, 902 P.2d 259.)
The three more recent Supreme Court cases all held that, even though the litigants did not directly "incur" fees, they were nevertheless allowed to recover the reasonable value of the legal services provided. The first of these cases decided after Trope was PLCM which held that a party represented by in-house lawyers was entitled to contractual legal fees under section 1717. PLCM distinguished Trope, stating: "None of the foregoing considerations [i.e., those involved in Trope] apply in the case of in-house counsel. There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interest and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer.... The fact that in-house counsel is employed by the corporation does not alter the fact of representation by an independent third party." (PLCM, supra, 22 Cal.4th at p. 1093, 95 Cal.Rptr.2d 198, 997 P.2d 511.)
So here, representation by a lawyer who does not charge a fee does not create a problem of disparate treatment. We can say with the PLCM court that lawyers acting without fee "do not represent their own personal interest and are not seeking remuneration simply for lost opportunity costs that could not be recouped by [the paid lawyer]." (PLCM, supra, 22 Cal.4th. at p. 1093, 95 Cal.Rptr.2d 198, 997 P.2d 511.) And "the fact that ... counsel is employed [without a fee agreement] does not alter the fact of representation by an independent third party." (Ibid.)
The next Supreme Court case, Ketchum, held that a defendant represented by a lawyer under a contingent fee arrangement was entitled to fees with a lodestarenhancement in obtaining a dismissal under section 425.16, the anti-SLAPP (strategic lawsuit against public participation) *738 statute. But it failed to address the Trope issues, citing the case only in passing for a proposition not relevant to our consideration here. (Ketchum, supra, 24 Cal.4th at p. 1136, 104 Cal.Rptr.2d 377, 17 P.3d 735.) Ketchum is nevertheless significant because the court noted that a mandatory award of fees to the successful defendant tends to discourage the types of lawsuits the anti-SLAPP statute is designed to deter. (Id. at p. 1131, 104 Cal.Rptr.2d 377, 17 P.3d 735.) So here, a rule awarding monetary discovery sanctions to parties represented by lawyers who do not charge their clients fosters the purpose of the sanction statute by discouraging discovery abuses.
The most recent case, Lolley, held that, although the legal services provided by the Labor Commissioner were at no cost to the successful litigant, he could nevertheless recover such fees under Labor Code section 98.2, subdivision (c) which permits recovery of attorney fees "incurred." (Lolley, supra, 28 Cal.4th at p. 371, 121 Cal.Rptr.2d 571.) The court dealt with the language it had used in Trope that appears to disallow fees simply because they were not "incurred" and made it clear that the analysis was neither that easy nor that mechanical. The court acknowledged that the holding in Trope seemed to be based on the fact that "`the usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation.' [Citation.]" (Id. at p. 377, 45 Cal.Rptr.2d 241, 902 P.2d 259.) But a mechanical reading of the word "incur" does not determine entitlement to fees.
As Lolley explained, "[t]his language, however, was not intended to resolve issues, such as the one presented here, that were not raised in Trope. This was demonstrated by our later decision in [PLCM], in which we rejected the defendant's reliance on ... language in Trope that the term `attorney fees' generally refers to fees the litigant `actually pays or becomes liable to pay,' noting that Trope did not address [the issues in PLCM] and citing the familiar rule that `the language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts. [Citation.]' [Citation.]" (Lolley, supra, 28 Cal.4th at p. 377, 121 Cal.Rptr.2d 571, 48 P.3d 1128.)
It is thus obvious that the rule enunciated in Trope is limited to its facts: lawyers representing themselves in cases involving contractual fees under Civil Code section 1717 are not entitled to such fees because of the resulting disparate treatment between lawyer and non-lawyer litigants. No such disparate treatment results here from the award of monetary discovery sanctions to a lawyer who does not charge a fee. Thus, Trope does not control.

Court of Appeal Decisions
The trial court based its denial of sanctions on Argaman v. Raton, supra, 73 Cal.App.4th 1173, 86 Cal.Rptr.2d 917 (Argaman). In reliance on Trope, Argaman held that lawyers representing themselves may not be awarded sanctions in the form of fees for discovery abuses by their opponents. (Id. at p. 1175, 86 Cal.Rptr.2d 917.) The decision was premised in part on the fact that the lawyer-litigant had not "incurred" legal fees. (Id. at p. 1181, 86 Cal.Rptr.2d 917.) But, as we have pointed out, the issue whether a client who does not actually have to pay additional fees generated by an opponent's action does not merely turn on the question of whether such fees were "incurred." Argaman recognized the gravamen of the holding in Trope by concluding disparate treatment *739 would result between self-represented lawyer-litigants and self-represented non-lawyers involved in discovery disputes. (Id. at p. 1180, 86 Cal.Rptr.2d 917.) However, as we have noted, to permit lawyers who do not charge their clients to obtain monetary discovery sanctions in the form of fees does not result in disparate treatment; rather, the opposite is true.
In Abandonato v. Coldren (1995) 41 Cal. App.4th 264, 268-269, 48 Cal.Rptr.2d 429 (Abandonato), we affirmed an award of sanctions under section 128.5 in the form of attorney fees to self-represented lawyers. In addition to noting that a denial of such fees would frustrate the purposes of section 128.5 (id. at p. 269, 48 Cal.Rptr.2d 429), we distinguished Trope, stating, "there is nothing oppressive or one-sided in awarding attorney fees under Code of Civil Procedure section 128.5 to an attorney who litigates in propria persona." (Id. at p. 268.)
Relying in part on Abandonato, In re Marriage of Adams (1997) 52 Cal.App.4th 911, 60 Cal.Rptr.2d 811 affirmed an award of attorney fees under section 128.5 to a party whose lawyer represented her under a contingent fee agreement. (Id. at p. 915, 60 Cal.Rptr.2d 811.) The Adams court focused on the absence of disparate treatment as described in Trope, but noted an equal troubling problem: "If we disallowed sanction awards in favor of parties represented by contingent fee lawyers, but allowed sanctions awards against such parties, we would create an imbalance and defeat the true intent of the statute." (Id. at p. 916, 60 Cal.Rptr.2d 811.)
This case does not put all questions regarding fee awards to rest. The Argaman court took issue with our decision in Abandonato. (Argaman, supra, at 73 Cal. App.4th pp. 1180-1181, 86 Cal.Rptr.2d 917.) And, relying on Argaman and Trope, Kravitz v. Superior Court (2001) 91 Cal.App.4th 1015, 1020, 111 Cal.Rptr.2d 385, again held that self-represented litigants, whether lawyers or not, cannot recover fees as discovery sanctions, although they may recover reasonable expenses incurred. Further, whether the cases denying discovery sanctions to self-represented lawyers but awarding sanctions to such lawyers under section 128.5 are inconsistent and can be reconciled, or, if they cannot be reconciled, whether sanctions may or may not be awarded to such lawyers, are question left for a later day.

Sanctions May Be Awarded
Based on the cited cases, we conclude that fees or monetary sanctions in the form of fees may be ordered where the award does not result in disparate treatment between litigants. And this is true whether or not a party actually "incurs" additional fees as a result of the opposing party's conduct as is the case here where the party is represented by a lawyer who does not charge a fee.
Because there was no finding that real party's failure to appear at the scheduled depositions was "with substantial justification or that other circumstances make the imposition of the sanction unjust" (§ 2025, subd. (j)(3)), petitioner is entitled to monetary sanctions. The amount of the award shall be based upon the reasonable value of legal services rendered to petitioner as a result of real party's failure to attend the depositions, the subsequent motion, court appearances, and the proceedings in this court.

DISPOSITION
We grant the petition. Let a writ of mandate issue directing respondent superior court to vacate its order of October 18, 2002 denying petitioner's motion for monetary sanctions, to receive evidence of the reasonable value of legal services rendered *740 to petitioner by her lawyer as a result of this discovery dispute, and to issue a new order awarding petitioner sanctions in an amount based on the reasonable value of such services. Petitioner shall recover her costs in these writ proceedings.
WE CONCUR: SILLS, P.J., and MOORE, J.