[No. B233274. Second Dist., Div. Eight. July 23, 2012.]

NEMECEK & COLE et al., Plaintiffs and Respondents, v.
STEVEN J. HORN, Defendant and Appellant.

■■■■■■■■

**COUNSEL**

Law Offices of Miguel A. Muro and Miguel A. Muro for Defendant and Appellant.

Murphy Pearson Bradley & Feeney, James A. Murphy, Harlan B. Watkins; Nemecek & Cole, Frank W. Nemecek and Mark Schaeffer for Plaintiffs and Respondents.

**OPINION**

**BIGELOW, P. J.**—Steven J. Horn appeals from the judgment, contending the trial court erred in confirming an arbitration award and awarding attorney fees. Horn primarily contends the arbitrator failed to disclose necessary information which would cause a reasonable person to doubt the arbitrator's neutrality. We affirm the judgment.

## FACTS

Horn was retained by Henry and Janelle Hoffman (the Hoffmans) to represent them in a lot line dispute with their neighbors. After a bench trial,

an adverse judgment was entered against the Hoffmans and they appealed the decision, retaining different counsel to represent them on appeal. The judgment was reversed on appeal. Horn subsequently sued the Hoffmans for unpaid fees and the Hoffmans counterclaimed for fraud, alleging that Horn materially misrepresented his experience in real estate matters, improperly billed the Hoffmans and failed to timely tender a cross-complaint to their homeowners insurance. Horn retained Frank Nemecek and Nemecek & Cole (collectively Nemecek) to represent him in the matter against the Hoffmans.

After trial, the jury returned a verdict of $42,282.56 to Horn on his fee claim against the Hoffmans and an identical amount to the Hoffmans on their fraud action against Horn. Because the award amounts offset each other, a judgment was entered awarding both parties "zero." The Hoffmans moved for a new trial solely on the issue of insufficiency of the damages award and filed a motion for attorney fees. When the motion for new trial and attorney fees was denied, the Hoffmans filed a motion for judgment notwithstanding the verdict. That too was denied. The Hoffmans appealed.

This division considered the Hoffmans' appeal and determined that they were entitled to attorney fees since they were the prevailing defendants on the complaint. The matter was remanded to the trial court to retry the issue of damages and attorney fees and costs. On remand, the trial court ordered Horn to pay approximately $380,000 in attorney fees to the Hoffmans. While that order was on appeal, Horn settled with the Hoffmans for $250,000.

Horn believed Nemecek's negligence was the cause of the "disastrous results" in his claim against the Hoffmans. He demanded Nemecek submit to arbitration with JAMS as specified in their retainer agreement. Nemecek filed a counterclaim against Horn for unpaid attorney fees and costs. The parties chose retired United States District Judge George Schiavelli as the arbitrator. The arbitrator presented his disclosure statement to the parties and Horn requested additional disclosure of all matters in which Nemecek appeared before the arbitrator. JAMS responded that no case was found.

The evidentiary hearing lasted five days, with each party submitting testimony and briefing. In an extensive opinion, the arbitrator noted that issues of credibility were very important and "found Horn's credibility lacking." The arbitrator ordered the parties to take nothing on their respective claims but allowed either party to claim attorney fees if they wished to do so. Both parties submitted claims for attorney fees. The arbitrator found Nemecek was entitled to $289,028.85 in attorney fees, explaining that this was a

complex case "requiring a great deal of work." The arbitrator denied any offset claimed by Horn, finding that Nemecek was the prevailing party since they were granted virtually all the relief they sought on Horn's claim.

"Shocked" by the arbitrator's order, Horn decided to hire a private investigator to determine whether there existed any undisclosed relationships between the arbitrator and Nemecek, its counsel or its witnesses. The private investigator discovered the following: the arbitrator and the head of Nemecek's appellate department, Mark Schaeffer, were both members of the Los Angeles County Bar Association's appellate court's section executive committee; the arbitrator and Edith Matthai, Nemecek's expert witness in the arbitration, appeared together as panelists for various seminars and were both members of the board of governors of the Association of Business Trial Lawyers; the arbitrator was employed as an attorney at the firm of Brown, White & Newhouse, which represents lawyers in malpractice actions; and Nemecek attorneys appeared before the arbitrator when he was a district court judge in 2006. These undisclosed relationships formed the basis for Horn's petition to vacate the arbitration award and oppose Nemecek's petition to confirm the award. The trial court entered judgment in favor of Nemecek on April 5, 2011. Horn timely appealed.

## DISCUSSION

Horn challenges the trial court's order confirming the arbitration award on the ground that the arbitrator failed to disclose the facts which were discovered by the private investigator. According to Horn, the failure to disclose would cause a person to reasonably entertain a doubt that the arbitrator would be able to be impartial. Thus, Horn demands a new arbitration before a "truly neutral arbitrator." Horn also contends the order awarding Nemecek attorney fees incurred in connection with their petition to confirm the arbitration award was excessive and an abuse of discretion. We find no basis to reverse the arbitration award or the attorney fees award.

### I. *Failure to Disclose*

■ The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) "represents a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Under the statutory scheme, a proposed neutral arbitrator must disclose to the parties within 10 days of being chosen "all matters that could cause a person aware of the facts to reasonably entertain a doubt that

the proposed neutral arbitrator would be able to be impartial." (Code Civ. Proc., § 1281.9, subd. (a)–(b).) These disclosures include: (1) "any ground specified in Section 170.1 for disqualification of a judge"; (2) "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council"; (3) any prior or pending arbitration in which the proposed arbitrator served as a party arbitrator for any party or their lawyer; (4) any prior or pending arbitration in which the proposed arbitrator served as a neutral arbitrator for any party or their lawyer; (5) any attorney-client relationship with any party or attorney involved in the arbitration; (6) "[a]ny professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party." (§ 1281.9, subd. (a)(1)–(6).) The ethics standards adopted by the Judicial Council require the disclosure of "specific interests, relationships, or affiliations" and other "common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial." (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards), com. to std. 7.) Specific matters that must be disclosed include, for example, the arbitrator's financial interest in a party or the subject of the arbitration, the arbitrator's knowledge of disputed facts relevant to the arbitration, and the arbitrator's "membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation." (Ethics Stds., std. 7(d)(13); see *id.*, std. 7(d)(9), (10), (12).)

■ Based upon these disclosures, the parties are afforded an opportunity to disqualify the proposed neutral arbitrator. (Code Civ. Proc., § 1281.91, subds. (b)(1), (d).) If an arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," the trial court must vacate the arbitration award. (§ 1286.2, subd. (a)(6)(A).)

The disclosure requirements were intended to ensure the impartiality of the arbitrator, not to mandate disclosure of "all matters that a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 393 [112 Cal.Rptr.3d 853, 235 P.3d 152].) We are mindful that " ' "ordinary and insubstantial business dealings" ' arising from participation in the business or legal community do not necessarily require disclosure." (*Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 733 [75 Cal.Rptr.3d 869] (*Koch*), quoting *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 959 [51 Cal.Rptr.3d 903].) Indeed, arbitrators "cannot sever all their ties

[to] the business world." (*Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 505 [55 Cal.Rptr.2d 685].) "Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business contacts in the particular field." (*Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1087–1088 [213 Cal.Rptr. 62], disapproved on another ground in *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at pp. 27–28.) To the extent these relationships are substantial and involve financial considerations creating an impression of possible bias, they must be disclosed. Like the Supreme Court, "[w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (*Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145, 149 [21 L.Ed.2d 301, 89 S.Ct. 337].)

Horn contends the arbitrator was required, but failed, to disclose four facts: (1) his professional relationship with Mark Schaeffer; (2) his professional relationship with Edith Matthai; (3) Nemecek's appearance before him while he was a district court judge; and (4) his work for Brown, White & Newhouse. We address each of these disclosures below. Because we are presented with a mixed question of fact and law, we review de novo the trial court's order confirming the arbitration award. (*Haworth v. Superior Court, supra*, 50 Cal.4th at pp. 383, 385.)

## A. Relationship with Mark Schaeffer

Schaeffer is the head of Nemecek's appellate department and testified at the arbitration. During his testimony, Schaeffer admitted he was a member of the appellate courts section executive committee of the Los Angeles County Bar Association. The appellate committee is comprised of 186 members (as of December 2010) and meets regularly to provide continuing legal education and networking opportunities. The private investigator discovered that the arbitrator was also a member of the appellate courts section executive committee. Horn contends the arbitrator should have disclosed his involvement with the appellate committee when Schaeffer testified he was a member. Horn contends it is particularly notable that the arbitrator had to weigh Schaeffer's credibility against Horn's with respect to appellate matters while they were both members of an appellate committee. We conclude the arbitrator's participation in a group comprised of 186 members, of which Schaeffer was one, does not require disclosure.[1]

---

[1] We also reject Horn's contention that the arbitrator improperly communicated with Jon Cole from Nemecek outside of Horn's presence. Horn's sole evidence that an ex parte communication occurred is the arbitrator's statement that he "received word that there is a good deal of unhappiness about the issuance (or non-issuance) of the attorney's fee award . . ."

In reaching this decision, we are guided by *Koch, supra*, 162 Cal.App.4th at page 733. There, an arbitrator disclosed that he had served on the board of the Business Trial Lawyers Association with a witness and an attorney in the case. The board was typically composed of three dozen members out of the 500- to 700-member association. The arbitrator also disclosed that he was on the board of the American Inns of Court with another attorney in the case. (*Id.* at p. 726.) The arbitrator explained, " '[w]e are not talking about a social relationship. I have never been in his home, nor he in mine. We have participated in professional boards together. . . . We are not talking about close personal friendships or any kind of business relationships. We are talking about the fact that I have been actively involved in the legal community for over 30 years, Mr. Steiner over 40. Any time you're talking with lawyers or judges who have been around that long, they know each other.' " (*Ibid.*)

On appeal, the court held there was no requirement that those affiliations be disclosed, particularly where the contact was "slight or attenuated." There was no indication the arbitrator had a personal relationship, or close friendship, with either the witness or the attorney. There was also no indication of any business relationship between or among them. (*Koch, supra*, 162 Cal.App.4th at p. 734; see *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 939–940 [106 Cal.Rptr.2d 240] ["Membership in a professional organization does not provide a credible basis for inferring an impression of bias."]; *Ray Wilson Co. v. Anaheim Memorial Hospital Assn., supra*, 166 Cal.App.3d at pp. 1087–1088 ["The fact that an arbitrator and a party to the arbitration are members of the same professional organization 'is in itself hardly a credible basis for inferring even an impression of bias.' "]; *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.*, (1972) 28 Cal.App.3d 556, 567 [104 Cal.Rptr. 733] [no disclosure required where arbitrator and party's appraiser belonged to the same professional organization].)

██ As in *Koch*, the arbitrator's membership with Schaeffer in the appellate committee of the county bar association is too "slight or attenuated" to require disclosure. There is no indication of any personal or other professional relationship between them. The arbitrator was not required to disclose his "relationship" with Schaeffer.

B. *Relationship with Edith Matthai*

Horn also contends the arbitrator should have disclosed his "prior long standing professional relationship" with Edith Matthai, who served as an

---

Horn deduces from this statement (made in a general e-mail to all parties, including Horn) that "word" must have come from Cole ex parte because Cole was included in this e-mail and no others. We find this to be rank speculation.

expert witness for Nemecek in the arbitration. The arbitrator had previously served on the litigation executive committee and the executive board of the Los Angeles County Bar Association while Matthai was its president. Matthai and the arbitrator served as panelists in a seminar put on for the Association of Business Trial Lawyers. Also, James Robie,[2] Matthai's law partner and husband, and the arbitrator were both members of the Los Angeles County Bar Association litigation section. "Based upon these facts, [(according to Horn)] it is no stretch to believe that if the Arbitrator and Matthai shared a presence on at least one panel, had known each other over the course of years, and the Arbitrator had worked with Matthai's husband and law partner Robie, then they had a personal relationship and mutual professional respect. Such may reasonably be deduced from the facts." ·

We disagree. As explained in *Koch* and the cases cited above, the arbitrator's participation in the same panels or bar association committees does not provide a credible basis for inferring an impression of bias. From these facts, it is an unreasonable stretch of the imagination to assume that the arbitrator had a relationship with Matthai that required disclosure.

### C.   *Law Firm Employment*

We similarly reject Horn's contention that the arbitrator should have disclosed his employment at a law firm. The arbitrator is of counsel at Brown, White & Newhouse (BWN), a private law firm that has represented clients in the area of legal malpractice defense. Relying on *Benjamin, Weill &* · *Mazer v. Kors* (2011) 195 Cal.App.4th 40 [125 Cal.Rptr.3d 469] (*Benjamin*), Horn contends that the arbitrator's undisclosed defense of attorneys in legal malpractice actions is a basis for vacating the arbitration award in this case. In *Benjamin*, the court held that an objective person could reasonably question the impartiality of an arbitrator in a dispute over legal fees who, at the time of the arbitration, was engaged primarily in the defense of attorneys and law firms in cases involving professional responsibility and was actively representing a law firm in a case before the California Supreme Court involving a dispute over legal fees. (*Id.* at p. 72.)

This matter is nothing like the *Benjamin* case. Nemecek presented a declaration by BWN's founding partner and general counsel, who stated that BWN handles criminal defense and civil litigation. "Since its founding, BWN has represented plaintiffs in two legal malpractice cases and a defendant in

---

[2] We note that James Robie is, unfortunately, now deceased.

one other. That does not count two matters in which BWN has defended itself against legal malpractice allegations. [The arbitrator] has not worked on any legal malpractice matter for BWN." Unlike in *Benjamin*, there is no indication BWN, or the arbitrator in particular, devotes its practice to legal malpractice defense. No impression of bias can be inferred from the fact that BWN represented clients in three malpractice matters and defended itself in another two, particularly when the arbitrator was not involved in any of those matters.

### D. *Prior Appearance by Nemecek*

In an argument that borders on frivolous, Horn suggests that the arbitrator should have disclosed that Nemecek attorneys previously appeared before him in one case while he was on the district court bench. Implying he was deceived, Horn states that "[t]he arbitrator and JAMS expressly denied that [Nemecek] had any cases before him as judge in response to that specific inquiry by Horn." Horn misstates the facts. JAMS and the arbitrator, as required under Code of Civil Procedure section 1281.9, disclosed that Nemecek had never appeared before the arbitrator in any arbitration. Neither JAMS nor the arbitrator made any representations about his time on the bench. In any case, there is no requirement that an arbitrator disclose that attorneys appeared before the arbitrator in one case during his four years as a district court judge.

## II. *Attorney Fee Award*

Horn also challenges the trial court's award of attorney fees incurred in connection with the petition to confirm the arbitration award. We review the trial court's determination of attorney fees for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511].) We find no such abuse here.

When Horn presented his claim, Nemecek referred it to Lawyers Mutual Insurance Company (Lawyers Mutual), its insurer, which contracted with Murphy, Pearson, Bradley & Feeney (Murphy) to provide the defense. In Nemecek's motion for attorney fees, it presented Murphy's billing statements and a declaration from Harlan Watkins, Nemecek's primary defense counsel in the arbitration. Watkins stated that he had been practicing in California since 1995 with a focus on malpractice litigation. Watkins presented a general schedule and pay table for attorneys put out by the Department of Justice,

called the Laffey Matrix. Based on the Laffey Matrix, Watkins urged the court to adopt an hourly rate of $419.43 per hour for his work for a total of $45,759.81 in attorney fees. Watkins did not state what his actual hourly rate in the matter was. In opposition, Horn presented the declaration of Joel Mark, an expert regarding billing and fee disputes and Horn's expert witness in the arbitration. Mark reviewed Murphy's billing statements and concluded that Murphy billed Lawyers Mutual between $100 to $215 per hour for attorney services in the arbitration. The trial court awarded Nemecek $42,207.31 in reasonable attorney fees and costs.

Contending the amount awarded was more than double the amount actually incurred, Horn claims the trial court abused its discretion. In short, Horn urges us to cap the attorney fee award to that which was actually incurred. We decline to do so.

■ Here, the retainer agreement between Nemecek and Horn specified that the "prevailing party in the arbitration and any ancillary proceeding shall recover reasonable attorney's fees." Civil Code section 1717, subdivision (a), provides in part: "Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." " 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' " (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260 [105 Cal.Rptr.3d 214].) The amount to be awarded as attorney fees is left to the sound discretion of the trial court, which is in the best position to evaluate the services rendered by an attorney in his courtroom. (*Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 522 [198 Cal.Rptr. 725].)

Cases have affirmed an award of attorney fees that were not "actually incurred." In *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at pages 1094–1095, for example, the Supreme Court held that attorney fees may be recovered under Civil Code section 1717 for the work of in-house counsel. The court expressly held the trial court was not required to use a "cost-plus approach," namely a calculation of the actual salary, costs and overhead of in-house counsel, and could instead use market value to determine reasonable attorney fees. (*PLCM Group, Inc. v. Drexler, supra,* at pp. 1096–1097; see *Lolley v. Campbell* (2002) 28 Cal.4th 367, 371 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [rejecting contention that attorney fees "incurred," under a Labor Code provision, means only fees a litigant actually pays or becomes liable to pay

from his own assets; court could award fees to employee who could not afford counsel and was represented by Labor Commissioner].)

Given this authority, we are not persuaded by Horn's argument that the rate billed by Murphy represents the maximum reasonable hourly rate. Indeed, the case cited by Horn for this proposition, *Vella v. Hudgins, supra,* 151 Cal.App.3d at page 520, acknowledges that "the trend of the cases, however, is toward the conclusion that a trial court may consider the terms of the parties' contract, along with other factors, but that the terms of the contract do not compel any particular award." (*Id.* at p. 520.) Neither do we accept a rule that requires a trial court to limit its fee award to the amount incurred in all circumstances except under "unique factual circumstances" such as pro bono cases, contingency fee cases and representation by in-house counsel. None of the cases cited limit their holding to such "unique factual circumstances." Additionally, there is no support for Horn's argument that Nemecek cannot be reimbursed for attorney fees which were not actually paid. Indeed, this argument runs counter to the authority discussed above. Horn's reliance on *Richards v. Sequoia Ins. Co.* (2011) 195 Cal.App.4th 431 [124 Cal.Rptr.3d 637] for this argument is misplaced as that case involved an insurance bad faith claim. There, the trial court held the plaintiffs failed to show economic loss such as attorney fees incurred to secure the benefits due under an insurance policy. (*Id.* at p. 438.) That case did not involve a contractual attorney fee provision.

We also reject Horn's contention that the attorney fee request should have been denied because the fees were paid by Lawyers Mutual rather than Nemecek itself. (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410 [235 Cal.Rptr. 165] ["Plaintiffs were not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense."].)

Finally, we do not accept Horn's argument that the lodestar amount calculated by the trial court was not reasonable and should be reversed. As stated above, the trial court used the reasonable rates in the local community as a basis for its award. It was also presented with Murphy's time records and billing statements to show the work done. That Murphy could have provided more detailed billing records and the precise amount it was paid for its services does not render the trial court's determination an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Rubin, J., and Sortino, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.