Filed 12/1/21  Currency Corp. v. Wertheim CA2/1
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on
opinions not certified for publication or ordered published, except as specified by rule
8.1115(b).  This opinion has not been certified for publication or ordered published for
purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CURRENCY CORP., et al., | B276506 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC417798) |
| v. | |
| WERTHEIM, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

The Rubin Law Firm, Brett M. Rubin; Law Offices of F. Jay Rahimi, F. Jay Rahimi for Defendant and Appellant.

Huarte Appeals, Anne M. Huarte for Plaintiffs and Respondents.

_____

In 2006, Currency Corporation loaned $6,500 to Maibell Page, the transaction memorialized by a promissory note that contained an attorney fees provision. A dispute arose, and Page assigned her rights against Currency Corporation to Wertheim LLC.

Wertheim then initiated legal proceedings against Currency Corporation spanning 15 years. Those proceedings branched into an arbitration portion—which has itself spun off three lawsuits and resulted in four appeals (including this one)—and a separate lawsuit.

The arbitration portion of the dispute is now over. In it, Wertheim achieved nothing.

Currency Corporation and its affiliates sought attorney fees incurred in the arbitration portion of the dispute, which the trial court granted in the amount of $1.2 million.

Wertheim contends the court abused its discretion in awarding fees to Currency Corporation and its affiliates. We disagree, and therefore affirm.

## BACKGROUND

### A. Loans

Parviz Omidvar and his relatives, Oliver and O'Neil Omidvar, and their company, Tiffany Ventures, LLC (the Omidvar parties), along with Currency Corporation (we will refer to the Omidvar parties and Currency Corporation collectively as "Currency"), loaned money at high interest rates to elderly artists who owned royalty rights. In exchange, the artists would assign their royalties to Currency. Currency made some 80 loans to Maibell Page, the widow of Eugene Page, a successful songwriter.

Maibell assigned to Currency the royalty rights she derived from Eugene.

1.      The June 2006 Note

On June 2, 2006, Currency made the loan that is the subject of this and three related actions.  As evidenced by a promissory note (the June 2006 note), Currency loaned Maibell Page $6,500 for six months at an interest rate of two percent compounded every 10 days, with an administrative fee of 10 percent.

The June 2006 note contained an arbitration clause and three attorney fees provisions.

The first fee provision stated:  "[I]n connection with any claim or dispute arising out of or relating to this Note, including any litigation, arbitration or other proceeding alleging a breach of the terms of this Note, the prevailing party shall recover . . . reasonable attorneys' fees and costs incurred by such party prosecuting or defending such claim or dispute."

The second provision stated:  "The losing party shall reimburse the prevailing party for its reasonable outside attorneys' fees and costs incurred with respect to [any] Arbitration proceeding."

The third attorney provision stated:  "Borrower shall reimburse [Currency Corp.] for . . . reasonable attorneys' fees, expended or incurred by [it] in any arbitration or otherwise in connection with (a) . . . enforcement of the Loan Documents, including . . . rendering of legal advice as to the Holder's rights, remedies and obligations under the Loan Documents, (b) collecting any sum which becomes due to the Holder under any Loan Document, (c) any proceeding for declaratory relief, any counterclaim to any proceeding or any appeal, or (d) the protection, preservation or enforcement of any right or remedies of the Holder."

### 2. Second Assignment

In 2006, Page assigned to David Pullman, as principal of Wertheim, LLC, the royalty rights she had already assigned to Currency, as well as any causes of action she might have against Currency.

Pullman/Wertheim and Currency then entered into a legal dispute over Page's royalty stream, each contending the other made a widespread practice of swindling the gullible elderly. (E.g., *Currency Corp. v. Wertheim* (May 20, 2011, B222851) [nonpub. opn.] (*Currency I*).)

The dispute took two tracks—an arbitration track and a lawsuit track. (The arbitration track itself spun off three lawsuits.) This appeal concerns only the arbitration track.

## B. Arbitration Track

On June 8, 2009, Wertheim filed a form demand for arbitration with the American Arbitration Association, alleging causes of action against Currency for fraud, breach of contract, and elder abuse. Wertheim contended that each of the scores of transactions between Maibell Page and Currency was subject to the arbitration clause found in the June 2006 note. It demanded $5 million.

### 1. Instant Lawsuit to Enjoin Arbitration: LASC Case No. BC417798

A month later, on July 14, 2009, Currency filed the instant lawsuit, Los Angeles Superior Court (LASC) case No. BC417798, against Page and Wertheim for declaratory and injunctive relief, seeking to enjoin arbitration or confine it to the June 2006 note.

### 2. Cross-Complaint

Page and Wertheim cross-complained against the Omidvar parties only (not Currency Corporation) for fraud, breach of

4

fiduciary duty, and racketeering, alleging the Omidvar parties were Currency Corporation's alter egos.

3.　Arbitration Award

Meanwhile, the arbitration panel awarded Wertheim $672,122 against Currency Corporation only, which the superior court confirmed.

4.　Collection Litigation:　LASC Case Nos. BC444248 and BC441026

Wertheim attempted to collect on the arbitration award, both in the instant lawsuit and by filing an enforcement action, LASC case No. BC444248, against Currency Corporation, the Omidvar parties (as alter egos of the Currency Corporation), and approximately 50 third-party royalty payors.

Currency Corporation and Parviz Omidvar responded by filing a declaratory relief action to block enforcement, LASC case No. BC441026.

The trial court consolidated the enforcement and counter-enforcement actions, and deemed them related to the instant lawsuit.

5.　*Currency II*

In 2013, we held that only the June 2006 note contained an arbitration clause, and that note pertained only to one loan. Therefore, the arbitrators exceeded their authority by rendering an award on 79 other loans made by Currency to Page. Accordingly, we reversed the judgment confirming Wertheim's arbitration award and directed the trial court to vacate it. (*Currency Corp. v. Wertheim* (Sept. 30, 2013, B240444) [nonpub. opn.] (*Currency II*).)

5

6.    Remand Proceedings

Upon remand, the trial court dismissed the consolidated enforcement and counter-enforcement actions, and Maibell Page dismissed her cross-complaint.  (Wertheim had already been dismissed from the cross-complaint for lack of standing.)

Wertheim moved for an order directing the original arbitrators to affirm their findings and fashion a new award in Wertheim's favor.  However, the trial court observed that because Currency's complaint sought only to enjoin or limit arbitration, and the cross-complaint had been dismissed, our ruling in *Currency II* effectively ended the lawsuit.  Therefore, the court placed Wertheim's motion off calendar.

On January 8, 2015, the court entered judgment in favor of "Currency Corp." and "Parviz Omidvar, Oliver Omidvar, O'Neil Omidvar and Tiffany Ventures, LLC," declared "Currency" to be the prevailing party, and stated it would consider the entitlement of "Plaintiff Currency Corp. and Plaintiffs and Cross-Defendants Parviz Omidvar, Oliver Omidvar, O'Neil Omidvar and Tiffany Ventures, LLC" to attorney fees upon their submission of a memorandum of costs and motion to recover them.

7.    *Currency III*

Wertheim appealed from the judgment, contending the matter should be ordered back to arbitration for a revised award.  We disagreed, holding:  "The remand disposed of all issues raised by Currency's complaint, as Currency had sought only to enjoin arbitration or, in the alternative, to limit its scope to the June 2006 note.  The trial court therefore properly dismissed the complaint."  (*Currency Corp. v. Wertheim* (May 30, 2018, B262441, p. 8) [nonpub. opn.] (*Currency III*).)

Wertheim also contended the trial court erred in declaring Currency to be the prevailing party.  We disagreed:  "*Currency II*

6

granted the relief Currency sought by limiting arbitration to the June 2006 note. Therefore, the trial court was well within its discretion to designate Currency the prevailing party." (*Currency III*, *supra*, B262441, at p. 9.)

8.    Attorney Fees

While *Currency III* was pending, Currency Corporation and the Omidvar parties moved for attorney fees incurred in: (1) the instant lawsuit to enjoin arbitration; (2) arbitration proceedings; (3) proceedings to vacate the arbitration award; (4) *Currency II*; (5) the first remand proceedings; (6) *Currency III*; (7) the second remand proceedings; (8) the consolidated enforcement actions; and (9) defense against the cross-complaint in this action during the 10 months it was consolidated with another lawsuit, *post*. They supported the motion with invoices from nine attorneys who had worked on the case over six years and declarations from eight of them. Currency's evidence indicated that its attorneys spent 4,109.46 hours in this litigation, at an average hourly rate of $301, resulting in a total fee bill of $1,237,501.

The trial court granted the motion, awarding the Currency parties $1,237,501.00, jointly and severally against Wertheim, LLC and "Christopher Eugene Page, Trustee."

Wertheim appeals from that post-judgment fee order.

**C.    Lawsuit Track:  LASC Case No. BC530925**

In December 2013, Wertheim and Page filed an independent lawsuit against Currency, LASC case No. BC530925. At Wertheim's request, the trial court consolidated that case with the instant lawsuit, but 10 months later entered final judgment in this lawsuit and, over Wertheim's objection, severed the cases. The parties report that judgment was entered in case No. BC530925 on December 16, 2015. (As noted above,

7

this appeal concerns only the arbitration track of the Wertheim/Currency dispute, not the BC530925 lawsuit.)

## DISCUSSION

Wertheim contends: (1) Any fee award should be limited to litigation on the June 2006 note alone; (2) respondents were not the prevailing parties; (3) the fee award was unsupported by substantial evidence; and (4) the amount of fees incurred was unreasonable.

## A. Applicable Law

"Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.)

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

When an attorney fee provision encompasses fees incurred in connection with claims or disputes relating to the contract, fees may be awarded not only as to the contract claim, but also as to related claims. (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 993.)

Contractual fees may be recovered as costs. (Code Civ. Proc., §§ 1033.5, subd. (a)(10)(B), 1032, subd. (b).)

"[T]he primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method. The lodestar

(or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." (*Lealao v. Beneficial California, Inc*. (2000) 82 Cal.App.4th 19, 26 (*Lealao*).) Once the trial court has fixed the lodestar, "it shall consider whether the total award so calculated under all the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so it is a reasonable figure." (*Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77.) The lodestar may be adjusted at the discretion of the trial court "after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624.)

The trial court has broad authority to determine the amount of reasonable attorney fees. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) We review a court's determination under the abuse of discretion standard. (*Lealao*, *supra*, 82 Cal.App.4th at p. 25.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.)

The " ' "experienced trial judge is the best judge of the value of professional services rendered in his court . . . ." ' " (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.) Even if he or she did not preside over the trial, a trial judge has a unique familiarity with the value of services in the community and the skill and

9

time commitments necessary to litigate specific types of cases. Thus, "while [the trial judge's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." (*Ibid*.)

## B.     The Scope of Fees

Here, the first fee provision in the June 2006 note stated: "[I]n connection with any claim or dispute arising out of or relating to this Note, including any litigation, arbitration or other proceeding alleging a breach of the terms of this Note, the prevailing party shall recover . . . reasonable attorneys' fees and costs incurred by such party prosecuting or defending such claim or dispute."

Although the June 2006 note was the only one containing an arbitration provision, Wertheim expanded arbitration beyond that note by claiming it was part of a unified transaction, and its arbitration provision applied to the 79 other notes in the transaction. All litigation that resulted from the arbitration was incepted and maintained either to pare back or preserve this claim. Therefore, the entire arbitration track—including the instant lawsuit and cross-complaint, the arbitration proceedings and challenges thereto, both prior appeals and this one, all proceedings upon remand, and the enforcement actions—related to and arose from the June 2006 note. All fees incurred on that track were thus recoverable by the prevailing party.

Wertheim argues Currency is entitled to recover fees incurred only in actions "brought on the $6,500 Note." We disagree. The fee provision did not limit fees to those incurred in litigating the June 2006 note, but expanded them to those incurred in any litigation "arising out of or relating to" that note.

10

Wertheim argues that fees may be recovered under the reciprocity provision of Civil Code section 1717 only where the action had a reasonable chance of success. Because its alter ego allegations against the Omidvar parties in the cross-complaint had no chance of success, Wertheim argues, the Omidvar parties cannot recover fees incurred in defending against the cross-complaint.

The argument is without merit. Under Civil Code section 1717, the prevailing party is entitled to recover fees "so long as the party pursuing the lawsuit would have been entitled to attorney's fees had it prevailed. [Citations.] . . . [I]t would be inequitable to deny attorney's fees to one who successfully defends, simply because the initiating party filed a meritless case." (*Rainier National Bank v. Bodily* (1991) 232 Cal.App.3d 83, 86.)

## C. Currency Corporation, Parviz Omidvar, Oliver Omidvar, O'Neil Omidvar, and Tiffany Ventures, LLC are the Prevailing Parties

Wertheim argues there has never been a finding that Currency is the prevailing party in this case. It is incorrect. In January 8, 2015, the trial court entered judgment in favor of "Currency Corp." and "Parviz Omidvar, Oliver Omidvar, O'Neil Omidvar and Tiffany Ventures, LLC," and declared "Currency" to be the prevailing party. Although the court did not explicitly define "Currency," its use of the term "Currency Corp." when referring to the corporation, and "Parviz Omidvar, Oliver Omidvar, O'Neil Omidvar and Tiffany Ventures, LLC" when referring to the other parties, implied that the term "Currency" meant all parties collectively. (The judgment's inconsistent practice of alternately individuating and collectivizing the parties

11

resulted from the judge or clerk interlineating an otherwise attorney-prepared document.)  This implication is bolstered by the fact that the court invited all plaintiffs to submit a motion for attorney fees, which it would not have done had it not deemed them all to be prevailing parties.

We affirmed this implied prevailing party determination in *Currency III*.

Wertheim argued in *Currency III*, and repeats here, that Currency cannot be deemed the prevailing party because it filed this action "solely" to enjoin the arbitration, and no ruling has yet precluded arbitration on the June 2006 note—*Currency II* simply *confined* arbitration to that note.  This misstates the record.  As we observed in *Currency III*, although Currency sought to enjoin arbitration altogether, it also prayed in the alternative "that the arbitration . . . be limited in scope to . . . the specific Promissory Note at issue," i.e., the June 2006 note.  Because Currency achieved this alternative objective, we held, the trial court properly deemed it the prevailing party.  We will not revisit that issue here.

**D.    Substantial Evidence Supported the Fee Award**

Wertheim observes that the fees in this case were incurred in four different lawsuits, plus an arbitration and two appeals, each involving both contract and non-contract claims and numerous parties, most of whom—the third parties named in the enforcement actions—were not party to the June 2006 note.  It argues insufficient evidence supported the fee award because no admissible evidence indicated how attorneys fees were actually apportioned.  We disagree.

To the extent that shared counsel engage in litigation activity on behalf of a second party for whom fees are not

12

recoverable, the court has broad discretion to apportion fees. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.) A court may apportion fees even where the issues are connected, related or intertwined. (*El Escorial Owners' Assn v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1365.) However, the court need not apportion fees where claims are so intertwined that separation of time is "impracticable, if not impossible" to achieve. (*Abdallah v. United Sav. Bank* (1996) 43 Cal.App.4th 1101, 1111.)

Here, all respondents ultimately prevailed on all claims in all phases of litigation on the arbitration track. These claims were all inextricably bound to one issue: whether arbitration should proceed as to one note or 80 notes. Therefore, we conclude it was within the trial's discretion not to apportion fees as to respondents, cases, or issues.

Wertheim appears to argue the fee award was unsupported by sufficient evidence because some of respondents' evidence was inadmissible. We disagree. The award was supported by invoices from nine attorneys who worked on the case, declarations from eight of them, and the declaration of Oliver Omidvar. That other evidence was inadmissible does not render these declarations nugatory.[1]

**E.    Other Arguments**

   1.    Jurisdiction

Wertheim argues the trial court had no jurisdiction to award attorney fees incurred in the creditor cases, but supports

---

[1] Currency's motion to strike portions of Wertheim's reply brief is denied.

13

the argument with no reasoning or authority.  We therefore deem it forfeited.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

2.      Timeliness

Wertheim argues that Currency's fees motion was filed more than 180 days after Page dismissed the cross-complaint, rendering it untimely as to any fees incurred in defending against the cross-complaint.  We disagree.

"[T]he 'outside' time limit for claiming prejudgment statutory attorney fees" is the entry of a final judgment. (*Carpenter v. Jack in the Box* (2007) 151 Cal.App.4th 454, 468.) " 'Where a complaint and cross-complaint involving the same parties has been filed, there is no final appealable judgment *until both have been resolved.*' " (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 132.)  Here, no final judgment existed on the cross-complaint after it was dismissed because all parties to it remained parties in the original complaint.  (*Ibid.*)

3.      Case No. BC530925

Wertheim argues the trial court lacked jurisdiction to award attorney fees in this case for work performed in case No. BC530925, but admits it is unclear whether fees were actually awarded here for work done in BC530925.  Under that circumstance, we have no basis upon which to conclude the trial court erred.

4.      The Mayer Brown Law Firm

The trial court awarded Currency $209,123 in fees incurred for work performed by the law firm Mayer Brown, which was disqualified on June 28, 2013 in one of the enforcement cases, case No. BC441026, due to a conflict of interest involving representation by one of its former attorneys and a

14

Wertheim/Pullman affiliate 12 years earlier.  Wertheim argues the court abused its discretion in awarding fees for work done by Mayer Brown.  We disagree.

"California law does not establish a bright-line rule barring all compensation for services performed subject to an improperly waived conflict of interest, no matter the circumstances surrounding the violation."  (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.* (2018) 6 Cal.5th 59, 89.)  Whether fees should be awarded is left to "the discretion of the trial court, to be exercised in light of all the circumstances that gave rise to the conflict. . . .  'Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.' "  (*Id.* at p. 94.)  We presume the trial court considered these factors, evaluated the seriousness of the conflict of interest, and determined whether fees should be precluded.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  Wertheim offers no argument and adduces no evidence concerning the gravity of Mayer Brown's conflict of interest, its effect on the firm's work for Currency, any threatened or actual harm to Wertheim, or the adequacy of other remedies.  Under the circumstances, therefore, we cannot conclude the trial court abused its discretion in awarding fees for Mayer Brown's work.

5.      The Smith Law Firm

The trial court awarded Currency $269,115 for work performed by attorney Craig Smith, which reflected his billing rate of $375 per hour.  Smith declared that although he billed respondents at this rate, he collected only $250 per hour during the litigation, deferring "the remaining $125 per hour [to be] paid

15

from the recovery of any attorney fees." Wertheim argues that Currency therefore incurred fees for work performed by Smith at a rate of only $250 per hour. We disagree. " 'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below- market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel.' " (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260; accord *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651.)

6.     Attorney Jeremy Osher

The trial court awarded Currency $235,807 for work performed by attorney Jeremy Osher, whose initial declaration in support of the fees inadvertently omitted the invoices evidencing them (although they were served on Wertheim), a deficit later corrected. Wertheim argues the amount is unsupported by sufficient evidence. We disagree: The amount was supported by Osher's declaration and his timely-served-but-belatedly-filed invoices.

7.     Attorney Lawrence Ecoff

The trial court awarded Currency $155,961 for work performed by attorney Lawrence Ecoff, the invoices for which were provided only with the declaration of Oliver Omidvar, who stated he was familiar with the invoices of every firm that worked for Currency. Wertheim argues this hearsay evidence was insufficient to support the award.

However, Wertheim failed to include Omidvar's declaration in the clerk's transcript, making meaningful review of its claim impossible. (See Cal. Rules of Court, rule 8.204(a)(1)(C)

16

[a brief on appeal must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

If Omidvar merely received Ecoff's invoices and approved them, his declaration that Ecoff actually performed the work he claimed would arguably be inadmissible hearsay.  (See *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, (2018) 29 Cal.App.5th 1, 13 ["An invoice itself is hearsay . . . ."  "[I]n order to be competent evidence under [the business records exception to the hearsay rule], it must be supported by the testimony of a witness qualified to testify as to its identity and the mode of its preparation"].)

However if, as Currency claimed below, Omidvar declared that he personally oversaw Ecoff's work, his declaration supporting Ecoff's invoices would arguably be admissible under the business records exception.  (See *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 324 ["any 'qualified witness' who is knowledgeable about . . . documents may lay the foundation for introduction of business records—the witness need not be the custodian or the person who created the record"].)

Because the record lacks Omidvar's declaration, it is impossible for us to review whether the trial court abused its discretion in impliedly finding that Omidvar's oversight fell under the second scenario rather than the first.  (See *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 798 [trial court has wide discretion in determining whether proper foundation was laid for admission of evidence under the business records exception].) " 'It is the burden of the party challenging [a] fee award on appeal to provide an adequate record to assess error.' "  (*Ketchum v.*

17

*Moses* (2001) 24 Cal.4th 1122, 1140-1141.) Where a challenging party fails to do so, the trial court's ruling must be upheld. (*Id*. at p. 1142.)

    8.    Attorney Lawrence Hall

The trial court awarded Currency $49,065 for work performed by attorney Lawrence Hall. Wertheim argues $2,850 of Hall's fee was for preparation of a motion to withdraw for non-payment of fees, which cannot be charged to Wertheim.

Wertheim provides no citation to the record supporting the argument. Therefore, we deem the claim forfeited.

    9.    The Fee Award was Not Excessive

Wertheim argues that a $1.2 million fee award in litigation over a $6,500 note is excessive as a matter of law. We might agree in principle, but this litigation concerned not just one note, but Wertheim's $5 million arbitration claim.

    10.    The Fees Provision is Not Unconscionable

Wertheim argues that because the June 2006 note was unconscionable, no fees may be awarded for litigation regarding it. We conclude that under the circumstances here, the fee provision itself is not unconscionable as to Wertheim.

18

## DISPOSITION

The order is affirmed.  Respondents are to receive their costs on appeal.

NOT TO BE PUBLISHED

                                                CHANEY, J.

We concur:


        BENDIX, Acting P. J.


        FEDERMAN, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.