Filed 11/10/25  O'Hill Capital v. Phillips CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| O'HILL CAPITAL, | |
| Plaintiff and Appellant, | G063268, G064007 |
| v. | (Super. Ct. No. 30-2023-01314224) |
| JOHN BENEDICT PHILLIPS et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge. Affirmed.

Clinton Bailey and Mark C. Clinton; Law Office of Kathryn M. Davis and Kathryn M. Davis; Morris & Stone and Aaron P. Morris for Plaintiff and Appellant.

Kaufman Dolowich and Jeremiah Harvey for Defendants and Respondents.

No appearance for Respondent Andrea Rea O'Hill.

\*          \*          \*

INTRODUCTION AND PROCEDURAL HISTORY

This is an appeal from an order granting an anti-SLAPP motion. This case is an offshoot of the long-running divorce proceeding between Robert O'Hill (Robert) and Andrea O'Hill (Andi). As we discuss in detail in a concurrently filed opinion in *O'Hill v. O'Hill*, Nov. 10, 2025,G063223) [nonpub. opn.], the family law court has issued orders requiring Robert to pay Andi's attorney fees, which Robert has largely failed to comply with.[1] The record in that appeal reveals that he is over $1 million in arrears on payments in fees and costs. In an effort to enforce its orders, the family law court issued a charging order against Robert's interest in appellant O'Hill Capital and joined O'Hill Capital in the family law proceeding.

After O'Hill Capital was joined in the family law proceeding, Andi filed what amounted to a civil complaint directly against O'Hill Capital, asserting ten causes of action. She included claims for declaratory relief, tortious interference with contract/economic advantage, fraud, and breach of fiduciary duty. This complaint was filed in the family law proceeding. O'Hill Capital demurred, asserting various grounds, including that the complaint failed to state a cause of action, and that the complaint exceeded the jurisdiction of the family law court. The family law court sustained the demurrer "with prejudice" but "with the following reservations: a. Andi is not precluded from per[su]ing [*sic*] tort and contractual claims against [O'Hill Capital] in any civil proceeding," and O'Hill Capital remained joined to the family law proceeding for purposes of enforcing the attorney fee orders.

---

[1] This opinion assumes the reader is familiar with our opinion filed concurrently in Case No. G063223.

Afterwards, O'Hill Capital filed the lawsuit at issue here: a malicious prosecution action against Andi and her attorneys (the attorney defendants) arising from the family law complaint. O'Hill Capital alleged, among other things, that the underlying complaint had been "outside the scope of the family law court" and exceeded its jurisdiction. In response, the attorney defendants filed an anti-SLAPP motion in which Andi joined.

The trial court granted the anti-SLAPP motion, concluding that the malicious prosecution action arose from protected activity (the filing of a complaint), and O'Hill Capital had failed to make a prima facie case on the merits. In particular, the court found O'Hill Capital had failed to establish the first element of a malicious prosecution claim: termination of the underlying complaint in its favor. Case law has interpreted that element as requiring a ruling on the substantive merits of the claim, as opposed to a ruling based on procedural flaws. The court interpreted the family court's ruling as being procedural, rather than substantive. The court also concluded O'Hill Capital had failed to establish the third element of malicious prosecution: malice. O'Hill Capital appealed.

Meanwhile, the attorney defendants filed a motion for attorney fees. The court granted the motion in part, awarding $47,590 in fees. O'Hill capital appealed from that order as well. We consolidated both appeals into the present appeal.

DISCUSSION

I.

O HILL CAPITAL FAILED TO ESTABLISH A PRIMA FACIE CASE ON THE MERITS

We review a court's order granting an anti-SLAPP motion de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) We conclude the trial court was correct as to the second prong of the anti-

3

SLAPP analysis: O'Hill Capital failed to make a prima facie case that the underlying complaint was terminated in O'Hill Capital's favor, as that element of malicious prosecution has been interpreted by caselaw. Because O'Hill Capital failed to establish the second prong of the anti-SLAPP analysis, the trial court correctly granted the anti-SLAPP motion.

The anti-SLAPP statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity . . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Here, there is no dispute that O'Hill Capital's malicious prosecution action arises out of protected activity: it sued defendants for having sued it. We thus proceed to the second phase, which is whether O'Hill Capital has established a probability of prevailing on its claims.

In the second phase of the anti-SLAPP analysis, "the burden shifts to the plaintiff . . . to establish a probability it will prevail on the claim. [Citation.] The plaintiff need only state and substantiate a legally sufficient claim. [Citation.] The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a

4

matter of law. [Citation.] The procedure is meant to prevent abusive SLAPP suits, while allowing 'claims with the requisite minimal merit [to] proceed.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup, supra,* 39 Cal.4th at p. 292.)

The first element has been interpreted as requiring a resolution, either express or implied, on the substantive merits of the claim, as opposed to procedural or technical resolutions. The "termination must *reflect* on the merits of the underlying action." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.) "It is apparent 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Id.* at p. 751.) "The key is whether the termination reflects on the underlying defendant's innocence." (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855 (*Eells*).) "The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical,

5

procedural or other reasons that are not inconsistent with the defendant's guilt." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 881.) "Examples of technical or procedural reasons for terminating an action include abandonment of 'the proceeding because of the defects in the complaint, or doubts as to the jurisdiction of the offense, with the intention of bringing a new proceeding in proper form or before a proper court.'" (*Eells, supra,* 36 Cal.App.4th at p. 1855.)

The family law court's resolution of the complaint against O'Hill Capital does not satisfy this requirement. Although the court dismissed the complaint "with prejudice," the court's "reservation" allowing Andi to pursue her claims in civil court leaves no doubt about what it meant: Andi's complaint exceeded what she could pursue in family law court, but by permitting Andi to pursue those claims in another court, the family law court plainly did not pass on the substantive merits of Andi's claims. No reasonable court would send her to another court to pursue her claims if it had already ruled that the claims lacked substantive merit. Indeed, a few weeks later, the trial court reflected on its ruling, stating it was "without prejudice for Andi to file in another forum, and my order does not become the law of any other case filed or pending. My order is limited to these family law proceedings only." These comments reinforce our conclusion that the family court's ruling was purely procedural: the claims were not appropriate in a family law court but could be pursued in a proper forum. This is a procedural resolution, not a substantive one. Accordingly, O'Hill Capital has not shown that the underlying lawsuit was terminated in its favor, and, therefore, has not established a prima facie case of malicious prosecution. There was, therefore, no error in granting the anti-SLAPP motion.

## II.

### THE ATTORNEY FEE AWARD WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

After the court granted the anti-SLAPP motion, the attorney defendants moved for their attorney fees in the amount of $83,825. This amount was calculated based on the work of two attorneys, Vincent Green and Laura Birnbaum. Green sought compensation for 57.5 hours at $650 per hour. Birnbaum sought compensation for 92.9 hours at $500 per hour. They were hired by an insurance company and their billing statements reflected that they actually billed the insurance company $245 and $215 per hour, respectively. The court found that the lodestar billing rate for each attorney was $345 and $315 per hour, respectively. After deducting a small amount from the number of hours reasonably spent, the court found the total lodestar fee to be $47,442.

O'Hill Capital contends the court erred both in its calculation of the hourly rate and the number of hours reasonably spent.

"'California courts have long held that trial courts have broad discretion in determining the amount of a reasonable attorney's fee award.'" (*Pasadena Police Officers Assn. v. City of Pasadena* (2018) 22 Cal.App.5th 147, 167.) "A fee award "'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.'"" (*Ibid.*) "The abuse of discretion standard includes a substantial evidence component: 'We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred.'" (*Ibid.*) We conclude the court's findings were supported by substantial evidence, and the overall award was a sound exercise of discretion.

7

O'Hill Capital's principal argument is that the court awarded the attorney defendants a windfall by applying an hourly rate that was $100/hour higher than what they actually charged their client. O'Hill Capital contends the purpose of a fee award is compensation for costs incurred, not to punish the opposing party.

While we are sympathetic to the idea that a trial court should give serious consideration to the rate actually charged, the court's analysis is properly grounded in determining the "*prevailing* hourly rates as a basis for the lodestar" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (italics added)), and there is no law precluding a court from awarding more than the actual billing rate if the prevailing rate is higher. To the contrary, as O'Hill Capital is forced to concede, multiple courts have approved fee awards higher than the actual billing rate.

For example, in *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641 (*Nemecek*) the defendant, who prevailed, was represented by counsel supplied by an insurer. In the defendant's motion for attorney fees, counsel sought a lodestar rate of $419.43 per hour, which was based on a pay table for attorneys put out by the Department of Justice (the Laffey Matrix). Counsel did not disclose the firm's actual rate billed to the client. (*Id.* at pp. 650-651.) In opposition, the plaintiff presented expert testimony that insurance counsel of this nature would have billed the client between $100 and $215 per hour. (*Id.* at p. 651.) The trial court adopted approximately the $419.43 rate sought, and the plaintiff appealed. On appeal, the court held that the trial court was free to adopt the higher rate, even if that represented "an award of attorney fees that were not 'actually incurred.' " (*Id.* at p. 651.) The court concluded the actual billing rate did not set a maximum on what the court could award. (*Id.* at p. 652.)

8

And in *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 701, the court stated it explicitly: "There is no requirement that the reasonable market rate mirror the *actual* rate billed." There, the trial court likewise relied on the Laffey Matrix, and the reviewing court upheld that reliance as a proper exercise of discretion, noting that the range of the court's discretion would have encompassed the actual rate billed or the higher Laffey Matrix rate. (*Id.* at pp. 701-702.)

Here, the attorney defendants attested that, based on their experience in the industry (one of whom had over 40 years of experience), the rates they sought were reasonable. The rates they sought were below what was listed in the Laffey Matrix for attorneys of similar experience. Nevertheless, the court exercised its discretion to make a significant reduction to the amount the attorney defendants sought. This was supported by conflicting evidence: on the one hand, O'Hill Capital's expert attested that the actual billing rate ($215 and $245 per hour) was the market rate; the attorney defendants attested the market rate was between $500–$650 per hour. Cumulatively, this evidence, combined with the trial court's own inherent understanding of the legal market, permitted a reasonable inference that $315 and $345 per hour were reasonable prevailing rates for similar work. And as a matter of our own inherent expertise in these matters, those are quite reasonable rates well within the range of the trial court's discretion.

O'Hill Capital next contends that the evidence failed to establish that the hours spent by the attorney defendants—145.6—were reasonably spent. However, Birnbaum's declaration attached contemporaneous time records with descriptions of activities for both attorneys, and Green described by category the work that they performed. Both declared that their time

9

spent was reasonably necessary. The court was entitled to rely on that evidence. Accordingly, the court did not err in its award of attorney fees.[2]

## DISPOSITION

The judgment is affirmed. The attorney defendants shall recover their costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

GOODING, J.

---

[2] O'Hill Capital also contends the trial court misapplied the law when it stated: "The court had an option regarding the fees or the amount of time that was spent at those high rates, and the court was concerned about the requested amount." O'Hill Capital interprets this to mean that the court chose to analyze the reasonable rate *or* the hours spent, but not both. In the broader context, we do not interpret the court's statement as making such a basic mistake. Rather, we interpret the court's passing comment as describing its initial reaction to what it viewed as a high demand—something must be off with the rate or the hours—not that it could address one and ignore the other. The court's comments elsewhere in the hearing indicate it properly applied the lodestar calculation.