Filed 10/11/24  Tye v. Papp CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| MATTHEW TYE, | |
| Plaintiff and Appellant, | E080815 |
| v. | (Super.Ct.No. CVRI2201719) |
| ERIC PAPP et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Godofredo Magno, Judge.  Affirmed.

Matthew Tye, in pro per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

This is the fourth appeal this panel has heard between these parties.  Here, plaintiff and appellant Matthew Tye (Tye), appeals orders granting an anti-SLAPP motion and a fees motion.  Tye contends both motions should have been denied and that the trial court

1

wrongfully denied him the ability to conduct discovery to support his opposition.  We disagree and affirm.[1]

## I.  BACKGROUND

As in a previous appeal (*Tye v. Papp* (Oct. 10, 2024, E080245)), Tye's opening brief here violates California Rules of Court, rule 8.204(a)(2)(C) by containing no statement of facts.[2]  Tye submitted his opening brief in this appeal before receiving a tentative opinion noting the deficiency of his opening brief in the previous appeal.  Accordingly, we will again exercise our discretion to disregard the noncompliance here and caution Tye that future deficiencies may result in briefs being stricken.  (Rule 8.204(e).)  On our own motion, we take judicial notice of the appellate record in the previous appeals between these parties before this panel:  *Tye v. Papp*, E075153 (July 26, 2021) [nonpub. opn.] (*Tye I*); *Tye v. Papp*, E076523 (May 9, 2022) [nonpub. opn.] (*Tye II*); and *Tye v. Papp*, E080245 (Oct. 10, 2024) (*Tye III*).[3]  Respondents have not filed a brief.

In 2017, Tye sued defendant and respondent, Justin Tye, along with five other defendants, on a theory that he was defrauded in a real estate investment scheme.  Defendant and respondent Eric Papp, an attorney, represented Justin Tye in that case,

[1]  Undesignated statutory references are to the Code of Civil Procedure.

[2]  Undesignated rule references are to the California Rules of Court.

[3]  Another panel of this court has recently heard an appeal between some of the same parties.  (*Tye v. Tye*, July 15, 2024, E079807 [nonpub. opn.].)

which we will refer to as the fraud case. Tye, a disbarred attorney, has been representing himself throughout these actions.

Papp submitted a declaration in the fraud case that led Tye to file another lawsuit, this time against only Papp and Justin Tye, alleging defamation and abuse of process. According to the complaint in the new lawsuit, or the first anti-SLAPP case, Papp's declaration accused Tye of "criminal unauthorized practice of law" and of "criminal money laundering." Papp and Justin Tye filed a special motion to strike the complaint under section 425.16, commonly referred to as an anti-SLAPP motion. The trial court granted the motion, and in *Tye I*, we affirmed that decision. In *Tye II*, which addressed Papp and Justin Tye's anti-SLAPP fees motion, we reversed the trial court's fees award and remanded for further proceedings. In *Tye III*, which we recently decided, we again considered the fees motion in that anti-SLAPP lawsuit.

This appeal concerns a separate yet similar defamation lawsuit that Tye filed and that led to the trial court granting another anti-SLAPP motion and awarding fees. In September 2018, Papp emailed an Orange County Deputy District Attorney stating that certain of Tye's actions may have violated probation conditions imposed on him from a separate, criminal case. According to the complaint in this lawsuit, Papp's email again accuses Tye of "criminal unauthorized practice of law" and of "criminal money laundering." Specifically, "Papp accused [Tye] of 'representing' a person by taking an assignment," which Tye means to say he is an assignee. Tye alleges that "[a]s a matter of law, a self-represented plaintiff suing under an assignment is representing his own

3

interests, not the interests of the assignor." (We discuss this in greater detail later.) According to the complaint, Papp's email also "accused [Tye] of transferring money to [Tye's] girlfriend in 2014," but Tye alleges that "[t]here is nothing inherently criminal or improper about [Tye] transferring money to his girlfriend." The complaint, which is verified, alleges one cause of action for defamation based on Papp's email to the deputy district attorney.

Papp and Justin Tye filed an anti-SLAPP motion, which the trial court granted. While the motion was pending, Tye twice moved for leave to conduct discovery on the anti-SLAPP motion. The trial court denied leave to conduct discovery, and on the same day as it denied the second motion, it also granted Papp and Justin Tye's anti-SLAPP motion. Papp and Justin Tye then moved for fees. Tye moved ex parte to continue the fees motion and allow him to conduct discovery. The trial court denied Tye's ex parte motion and awarded Papp and Justin Tye a "reduced amount of $14,850," less than the $23,650 they had requested.

## II. DISCUSSION

### A. *The Anti-SLAPP Motion*

The anti-SLAPP statute provides a means for "weeding out, at an early stage" meritless claims that arise from the exercise of constitutionally protected rights of petition or speech. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Determining whether to grant an anti-SLAPP motion to strike involves two steps.

4

First, the defendant must establish that the claim arises from protected activity as section 425.16 defines it.  (*Baral*, *supra*, 1 Cal.5th at p. 384.)  The Legislature deemed four categories of acts protected, two of which matter to the claim in this appeal.  Those categories cover "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" as well as "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subd. (e)(1)-(e)(2).)  "Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute."  (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570 (*Siam*).)

If the defendant makes the required showing that the case arises from protected activity, at the second step "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral*, *supra*, 1 Cal.5th at p. 384.)  To satisfy this burden, the plaintiff must state and substantiate a legally sufficient claim.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.)  That is, the plaintiff """"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.""""  (*Ibid.*)

The grant or denial of an anti-SLAPP motion is reviewed de novo.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

*1. Protected Activity and Illegal Activity*

Tye's claim arises from protected activity. In *Siam*, the Court of Appeal held that a "defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities are protected by" the anti-SLAPP statute. (*Siam*, *supra*, 130 Cal.App.4th at p. 1570.) In *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, the Court of Appeal agreed with *Siam* and held that the defendant's "statement to the police arose from her right to petition the government and thus is protected activity." (*Chabak v. Monroy*, *supra*, at p. 1512.) Although the statement here was made to a deputy district attorney, it nevertheless arose from Papp's "right to petition the government and thus is protected activity." (*Ibid.*)

Tye does not contest that such reports are generally protected activity. Rather, relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), he contends that Papp's email was illegal conduct as a matter of law, so was not protected activity.

In *Flatley*, our Supreme Court held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but *either the defendant concedes, or the evidence conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra*, 39 Cal.4th at p. 320, italics added.) In the very next sentence, the Court

6

characterized the necessary evidence as "*uncontroverted* and conclusive evidence." (*Ibid.*, italics added.)

Tye fails to show that *Flatley*'s exception for illegal activity applies here. The basis of his claim is that Papp, in emailing the deputy district attorney, knowingly made a false report in violation of Penal Code section 148.5, subdivision (a). That provision states that "[e]very person who reports to" one of a list of people (including peace officers and deputy district attorneys) "that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor." (Pen. Code, § 148.5, subd. (a).) But even assuming, as we do for argument's sake, that Papp's claims that Tye committed crimes were false, the evidence fails to conclusively establish—and Papp does not concede—that Papp *knew* his statements were false at the time he made them.

For his part, Papp denied that he made any knowingly false statements to the deputy district attorney. In his declaration in support of the anti-SLAPP motion, Papp averred: "Absolutely nothing contained in any of my communications with [the deputy district attorney], or the attachments contained therein, was false or illegal in anyway whatsoever. Every statement in the emails[4] was made in good faith and contained a true, factual basis and was supported by documentary evidence." This is enough to preclude any showing that any evidence Tye seeks to rely on is "uncontroverted" (*Flatley*, *supra*,

---

[4] Papp and the deputy district attorney exchanged multiple emails, but only the September 2018 email described above is at issue.

39 Cal.4th at p. 320). For the sake of completeness, however, we will address why Tye's evidence is not conclusive either.

Tye relies on two documents that he claims show Papp knew his unauthorized practice of law statements were false. One requires little discussion, but some amount of context is needed for the other.

Tye first points to the respondent's brief Papp and Justin Tye filed in *Tye I*, which arose from the first anti-SLAPP case. Nothing Tye cites in that brief—filed more than two years after Papp's email—shows that Papp knew he made false statements in 2018. At most, the brief shows that Papp, in 2020 and speaking through appellate counsel, sought to dispute *Tye's* characterization of the accusation against him as involving criminal acts. It does not show that Papp knew he was making false statements to the deputy district attorney in 2018.

Tye next points to his declaration submitted in opposition to the anti-SLAPP motion in this case. Some additional background is necessary to understand his declaration.

One of the six defendants Tye sued in the fraud case was G F Services, LLC (GF). In his complaint there, Tye alleged that "$30,000.00 was invested with GF" for a property called Mazatlan. "Thereafter, GF was instructed by the original investor in writing that the investment proceeds were to be paid to, and the investment controlled by," Tye. "Defendants never had any contact with this investor except through" Tye.

8

In his September 2018 email to the deputy district attorney, Papp stated that the combination of these allegations and a separate document showed that an individual named K.T. had invested the money in the Mazatlan property that Tye was suing to recover. Because Tye was "suing in court over [K.T.'s] funds," the email stated, it was "the practice of law for which he has no license," which was a probation violation.[5]

Here, Tye argues Papp knew he was lying to the deputy district attorney when he made this statement. This was because Tye had represented, in *February* 2018, that K.T. had assigned her interest in the Mazatlan property to Tye. As evidence, Tye relies on the document we are focused on now, his declaration in support of his opposition to the anti-SLAPP motion in this case. In paragraph 23, he claims that he stated in a discovery response in the fraud case in February 2018 that the Mazatlan interest had been assigned to him. The unstated assumption is that Papp was aware of this statement.[6]

We take Tye's hearsay statement at face value, as Papp and Justin Tye did not file any evidentiary objections to Tye's declaration. Nevertheless, the statement falls short of

---

[5] We refer to K.T. by her initials out of an abundance of caution, as other portions of the appellate record suggest Tye may have committed crimes against her. (See Rule 8.90(b)(4).)

[6] Paragraph 23 of Tye's declaration states in full: "In RIC1601882, Papp sent me 60 RFAs tracking essentially every allegation in my pleading. In response to FI 17.1 I included the following sworn and verified statement: [¶] 'For Mazatlan, the funds were originally invested by a third party, who assigned its interest to me. That places me in privity with the defendants, and means the funds invested are mine. A document informing GF Services of the assignment was email [*sic*] to GF Services, and Chris Bowen has always acknowledged me as the owner. The Complaint clearly states that I was the party identified on the Durham note. See the note and deed of trust for the Durham property.' [FI 17.1 response, 2/7/2018]"

"conclusively establish[ing]" (*Flatley*, *supra*, 39 Cal.4th at p. 320) that Papp knew his statements to the deputy district attorney about the unauthorized practice of law were false. First, Tye has not shown that Papp (as Justin Tye's lawyer) served the set of interrogatories that led to Tye's response or received the responses to that set of interrogatories. (See Code Civ. Proc., § 2030.260, subds. (a), (c) [party to whom interrogatories are propounded shall serve responses to propounding party and "all other parties who have appeared in the action," but court may relieve responding party from serving responses to non-propounding parties if serving them "would be unduly expensive or burdensome"].) If Papp never received the response Tye says he made, then Papp would have had little reason to know about it when emailing the deputy district attorney. Second, even if Papp did receive the responses to the interrogatory set, it is not clear that Papp *read* the specific response Tye now relies on. The text of Penal Code section 148.5, subdivision (a) requires "knowing" that the report is false, not a lesser standard such as reckless disregard. Third, even if Papp read the response, it does not necessarily follow that Papp remembered and was aware of it when, several months later, he emailed the deputy district attorney. Tye's declaration is therefore no more than *some* evidence that Papp might have known of the assignment, not *conclusive* evidence as required for the exception to apply. (*Flatley, supra*, at p. 320.)

Tye's *Flatley* argument also fails as to Papp's statements about money laundering. Here, Tye does not even attempt to demonstrate that Papp *knew* any statements he made

10

to the deputy district attorney about Tye's alleged money laundering were false, but focuses on showing the statements fail to show he in fact laundered money.

Tye's cause of action therefore arises from acts protected by the anti-SLAPP statute.

### 2. *Probability of Prevailing*

Tye has also not shown that he has a probability of prevailing on his cause of action. Civil Code section 47 "establishes a privilege that bars liability in tort for the making of certain statements." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*).) Under subdivision (b) of that section (Civil Code section 47(b)), the privilege applies to communications made in "'any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],'" subject to certain exceptions. "The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." (*Hagberg*, *supra*, at p. 360.)

In *Hagberg*, a majority of our Supreme Court held that "communications are privileged under [Civil Code] section 47(b) when they are intended to instigate official governmental investigation into wrongdoing." (*Hagberg*, *supra*, 32 Cal.4th at p. 370.) Under *Hagberg*, then, unless an exception applies, Papp's email to the deputy district attorney falls under Civil Code section 47(b)'s privilege, and Tye cannot show a

11

probability of success on his cause of action.  The only question here is whether Papp's email falls under the exception provided in Civil Code section 47(b)(5).  We find the exception does not apply.[7]

Civil Code section 47(b)(5) was added by legislation signed by the Governor in September 2020 and became effective on January 1, 2021.  (Assem. Bill No. 1775 (2019-2020 Reg. Sess.), Stats. 2020, ch. 327.)  It provides that Civil Code section 47(b) "does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."  (Assem. Bill No. 1775, § 2.)

Tye argues Civil Code section 47(b)(5) applies and that Papp's email is therefore not privileged.  However, Papp's email was sent in 2018, years before section 47(b)(5) was added, and "statutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of a contrary legislative intent" (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955).  Tye has not tried to show, and our own research has not uncovered, clear indication of the Legislature's intent to apply Civil Code section 47(b)(5)

---

[7] Tye's argument that Papp's email was not reasonably relevant to pending official action (see *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212) does not engage with *Hagberg*, let alone cite it.  Because Papp's email was "intended to instigate official governmental investigation into wrongdoing" (*Hagberg*, *supra*, 32 Cal.4th at p. 370), we apply *Hagberg* and reject Tye's arguments concerning relevancy.

12

retroactively.  Tye therefore cannot show a probability of success on his sole cause of action, and the trial court correctly granted Papp and Justin Tye's anti-SLAPP motion.

*B.  Anti-SLAPP Discovery Motions*

While the anti-SLAPP motion was pending, Tye twice moved for leave to conduct discovery to support his opposition to the anti-SLAPP motion.  The trial court denied both motions, denying the second one on the same day it granted the anti-SLAPP motion.  Tye's argument that these decisions were erroneous has no merit.

Once an anti-SLAPP motion is filed, "[a]ll discovery proceedings in the action" are stayed.  (§ 425.16, subd. (g).)  But "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding" the stay.  (*Ibid.*)  "In the anti-SLAPP context, 'good cause' requires 'a showing that the specified discovery is necessary for the plaintiff to oppose the [anti-SLAPP] motion and is tailored to that end.'"  (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 692; see *ibid.* [upholding grant of discovery motion in part because requests were "narrowly tailored"].)  "In enacting section 425.16, 'not only did the Legislature desire early resolution to minimize the potential costs of protracted litigation, it also sought to protect defendants from the burden of traditional discovery pending resolution of the motion.'"  (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1124.)  We review the trial court's decision to grant or deny discovery under section 425.16, subdivision (g) for abuse of discretion, meaning we "'will not disturb the trial court's decision unless it "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'"

13

(*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1247.)

The trial court did not abuse its discretion here.  The scope of Tye's discovery request was sweepingly broad in the first motion, and it became arguably even more so in the second.  Tye's first motion stated that the following categories of discovery were "minimally required":

> "1.  All communications between Papp & Justin Tye from August 2018 through January 2018 [sic]. . . .
>
> "2.  All communications, without time limitations, [between the deputy district attorney and] Papp, Justin Tye, and/or any others acting on their behalf. . . .
>
> "3.  All communications, without time limitations, [between K.T. and] Papp, Justin Tye, and/or any others acting on their behalf. . . .
>
> "4.  All Discovery related to any statements made in the [anti-SLAPP] Motion and/or Declarations, reasonably calculated to lead to evidence to impeach those statements."  (Underlining removed.)

As the trial court correctly observed in denying the first motion, Tye's "broad, vaguely defined discovery" categories were a "far cry" from any tailored request

necessary for good cause.  But Tye's second request was hardly any narrower.  To the contrary, by adding new categories, it arguably cast an even wider net:

"1.  All communications between Papp, Justin Tye, or any of their agents, with:  [the deputy district attorney].

"2.  All communications between Papp, Justin Tye, or any of their agents, with:  [K.T.].

"3.  All communications between Papp, Justin Tye, or any of their agents, with:  any other law enforcement or administrative agency regarding Matthew Tye.

"4.  All communications between/among Papp & Justin Tye from 8/1/18 through 3/1/19.

"5.  All communications including Papp or Justin Tye and any other person from 8/1/18 through 3/1/19, regarding [Tye, the deputy district attorney, or K.T.].

"6.  All evidence tending to impeach Papp & his Declaration regarding the falsity of his statements and knowledge thereof."

(Underlining removed.)

Thus, even if discovery might have been warranted to show Papp knew his statements in the email were false when he made them (as Tye argued in the second motion), Tye's requests were overbroad.  There is nothing tailored, for example, about requesting all communications within a certain time frame between Papp, an *attorney*,

15

and his *client*, Justin Tye.  (See Evid. Code, § 954.)  Nor can it be considered tailored by requesting all communications between Papp or Justin Tye and K.T. regardless of date.  Nor was there any reason to believe that anything Papp or Justin Tye sent to any other agency about Tye—assuming they ever did—would have shown Papp knew his 2018 email to the deputy district attorney was false.  In rejecting the second motion, the trial correctly decided Tye had "failed to show that the specific discovery is both necessary for him to oppose the anti-SLAPP motion and tailored to that end."  Neither decision was arbitrary, capricious, or patently absurd.  We therefore find no error.

## C.  *Fees Discovery Motion*

Tye next contends that the trial court erred in denying him the opportunity to conduct discovery to oppose Papp and Justin Tye's fee motion.  Tye's stated purpose for the discovery was to develop evidence to support the argument that Papp, who is a lawyer, is in fact a self-represented party and therefore may not recover anti-SLAPP fees.  (See *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 494.)  His theory is that Papp and Justin Tye obtained counsel merely to have a "straw lawyer" to extract "windfall" fee awards from Tye and that they are not "actually paying" their counsel any fees.

Citing an insufficient showing of exigent circumstances, the trial court denied Tye's ex parte motion, which was entitled "Ex parte Application to Continue Defendants' Pending Motion for Attorney's Fees & Set A Briefing Schedule For A Motion For Leave For Discovery" (capitalization altered).  We need not separately consider the propriety of

16

the motion's ex parte features.[8]  Tye has not shown he would be prejudiced absent additional discovery, as caselaw makes clear Papp and Justin Tye have incurred recoverable fees even under Tye's theory.[9]

Tye alleges that Papp and Justin Tye have paid their counsel little to no money and that counsel does not expect them to pay.  Tye then argues that Papp and Justin Tye have not incurred recoverable fees as a result, because to incur means to be obligated to pay.  However, in *Lolley v. Campbell* (2002) 28 Cal.4th 367 (*Lolley*) our Supreme Court made clear that "'[a] party's entitlement to fees is not affected by the fact that the attorneys for whom fees are being claimed were funded by governmental or charitable sources or agreed to represent the party without charge.'"  (*Id.* at p. 373.)  Thus, "in cases involving a variety of statutory fee-shifting provisions, California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, *although the party did not have a personal obligation to pay for such services out of his or her own assets*."  (*Ibid.*, italics added.)  As a result, Tye's theory

---

[8]  Papp and Justin Tye's fees motion was filed on February 28, 2023, with a scheduled hearing date of March 30, 2023.  Tye's ex parte motion was filed on March 16, 2023.  His declaration accompanying the motion states that because the hearing on the fees motion was "set exactly 30 days" after the filing date, "it was impossible for [Tye] to bring any such motion except by applying ex parte for a briefing schedule, and to continue the pending fee motion."

[9]  In *Tye III*, too, we discussed the trial court's denial of Tye's fees discovery motion.  (*Tye III*, *supra*, E080245.)  Tye argued the denial was error, raising substantially the same points he does here.  Because there is no difference in the relevant facts that would alter our reasoning, our analysis is substantially the same as well.

17

would not preclude Papp and Justin Tye's fees, even if Tye were allowed to conduct additional discovery and uncovered evidence supporting his allegations.

In arguing otherwise, Tye relies on *Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*), in which our Supreme Court stated that "the usual and ordinary meaning of the words 'attorney's fees['] . . . is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (*Id.* at p. 280.) Tye's reliance is misplaced. In *Lolley*, the Court confined *Trope* to the context in which it arose: "We held in *Trope* that an attorney who appears in propria persona in an action to enforce a contract could not recover attorney fees under Civil Code section 1717," but the statement about the meaning of "attorney's fees" "was not intended to resolve issues . . . that were not raised in *Trope*." (*Lolley*, *supra*, 28 Cal.4th at p. 377.) Importantly, as *Lolley* noted, the principle that fees are recoverable even without a personal obligation to pay applies *to anti-SLAPP fees*: "[I]n *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1127, . . . we explained that 'any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.' [Citation.] Although the indigent defendant in *Ketchum* was not obligated to pay any fees out of his own assets, we held that an award of fees was authorized to pay the attorney for 'the fees *incurred* with respect to the underlying claim' and 'the fees *incurred* in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16.'" (*Lolley*, *supra*, at pp. 373-374; accord, *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 283 ["section 425.16, subdivision (c), can and should be construed to permit recovery of attorney fees that are accrued by outside counsel

18

representing a party on a partial pro bono basis, where counsel has not waived the right to seek recovery of the attorney fees from third parties, such as insurers, but only from the client"].)

Accordingly, even if discovery yielded support for Tye's claim that Papp and Justin Tye did not have a personal obligation to pay their counsel, they would still be entitled to their anti-SLAPP fees. Tye therefore fails to demonstrate prejudice (Cal. Const., art. VI, § 13), and discovery was correctly denied.

## D. Fees Motion

Lastly, Tye argues that the trial court's ruling on the fee motion itself was erroneous because Papp and Justin Tye did not actually incur any fees and because the trial court "should have at least considered" reducing the fee award to zero. The first argument has no merit for the reason discussed immediately above: Papp and Justin Tye are entitled to fees even absent a personal obligation to pay them.

The second argument also has no merit. In *Serrano v. Unruh* (1982) 32 Cal.3d 621 (*Serrano*), our Supreme Court stated that a "fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Id.* at p. 635.) Tye's argument implies that the trial court never considered reducing the fee award to zero. Such an implication, however, runs afoul of "'the presumption that judicial duty is properly performed [Evid. Code, § 664],'" which includes the presumption "'that the court knows and applies the correct statutory and case law.'" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.) In addition,

19

Tye cited to *Serrano* in his opposition motion, and the possibility of reducing the fee award to zero was brought up before Judge Magno in December 2022 in *Tye III*, three months before Judge Magno heard the fee motion.  We conclude the trial court considered the issue.  It simply declined Tye's request.

## III.  DISPOSITION

The January 3, 2023, anti-SLAPP order and March 30, 2023, fees order are affirmed.  Since respondents filed no briefing in this appeal, no award of costs is appropriate.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                    
                                                                                                   J.

We concur:

MILLER                   
                         Acting P. J.

MENETREZ               
                               J.